Argued and submitted January 5, decision of Court of Appeals reversed; judgment of circuit court affirmed April 8, 2010

## STATE OF OREGON,
*Petitioner on Review,*

*v.*

## CHARLES KAVIN LENNON,
aka Charles Cavin Lennon,
*Respondent on Review.*

(CC 02C46833; CA A122082; SC S057150)

229 P3d 589

Doug M. Petrina, Senior Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the briefs were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Meredith Allen, Senior Deputy Public Defender, Office of Public Defense Services, Salem, argued the cause for respondent on review. With her on the briefs were Peter Gartlan, Chief Defender, and Louis R. Miles, Deputy Public Defender.

LINDER, J.

**LINDER, J.**

This case is before us a second time. In its first decision, the Court of Appeals determined that it was plain error for the sentencing court not to have given defendant the option of a jury trial to decide the facts on which the court imposed an upward departure sentence for his conviction; the Court of Appeals then exercised its discretion to correct that error. *State v. Lennon*, 204 Or App 111, 129 P3d 209 (2008) (*Lennon I*). On review, this court vacated that decision and remanded for reconsideration in light of *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007), *adh'd to as modified on recons*, 344 Or 195, 179 P3d 673 (2008).[1] *State v. Lennon*, 345 Or 315, 199 P3d 63 (2008). On remand, the Court of Appeals reconsidered whether it should exercise its discretion to consider defendant's challenge to his sentence. It determined that it should do so, and again remanded the case for resentencing. *State v. Lennon*, 225 Or App 318, 320, 201 P3d 264 (2009) (*Lennon II*). We allowed the state's petition for review. For the reasons we explain below, we now reverse the decision of the Court of Appeals and affirm the judgment of the circuit court.

Defendant was convicted after a jury trial of unlawful delivery of a controlled substance (methamphetamine). After the jury returned its verdict, the trial court discharged the jury without objection. About one month later, the court held a hearing to impose sentence. Based on the seriousness of his current offense and the existence of two person-related felony convictions in his criminal history, the presumptive sentence for defendant's offense under the sentencing guidelines was 35 to 40 months of incarceration. The presentence report prepared by the Department of Corrections for defendant's sentencing catalogued a much more extensive criminal record for defendant than had factored into defendant's presumptive sentence under the guidelines. Based on the presentence report, the sentencing court imposed a durational departure sentence of an 80-month term of incarceration, followed by 36 months of post-prison supervision. The

---

[1] In remanding, we also cited *State v. Fults*, 343 Or 515, 173 P3d 822 (2007), which was a related case decided on the same date as *Ramirez*. For purposes of this case, *Ramirez* is the more important precedent and we cite and discuss it without considering *Fults* further.

sentencing court expressly found that "prior incarcerations, probations, paroles, sanctions haven't worked" to deter defendant from continued criminal activities. Defendant did not object to his sentence at the time of sentencing.

On appeal, defendant argued for the first time that, under *Blakely v. Washington*, 542 US 296, 124 S Ct 2531, 159 L Ed 2d 403 (2004), and *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000), the sentencing court had committed plain error in imposing a departure sentence based on facts that were neither admitted by defendant nor found by a jury. The Court of Appeals agreed. The Court of Appeals further agreed with defendant that it should exercise its discretion to correct that error, and it reversed. *Lennon I*, 204 Or App at 112.

The state petitioned for review and, while that petition was pending, this court issued its decision in *Ramirez*. As we have noted, we thereafter allowed the state's petition for review in this case, vacated the Court of Appeals decision, and remanded for reconsideration in light of *Ramirez*. On remand, the Court of Appeals adhered to its prior disposition. *Lennon II*, 225 Or App at 320. The state again petitioned for review, and we allowed the petition.

To provide context for our discussion of the Court of Appeals decision on remand, we begin by briefly describing our decision in *Ramirez*. In *Ramirez*, this court was presented with two issues. The first was whether it was plain error for a sentencing court to make the factual findings supporting a departure sentence. Under *Blakely* and *Apprendi*, such findings must be made by a jury unless the defendant waives his right to have the jury decide them. More specifically, the issue was whether it was plain error for the sentencing court to make the departure findings, given that the defendant had invoked his right to a jury trial to determine guilt and then did not object when the jury was discharged and the trial court imposed the departure sentence. *Ramirez*, 343 Or at 512.[2] The second issue was whether, if the sentencing court committed plain error, the Court of Appeals properly exercised its discretion to reach it. *Id.*

---

[2] That issue in *Ramirez* arose in the aftermath of this court's decision in *State v. Gornick*, 340 Or 160, 130 P3d 780 (2006). In *Gornick*, this court held that it was not plain error for the sentencing court to make the findings that supported a

This court declined to reach the first issue in *Ramirez*, concluding that the more "expeditious" way to resolve the case was to assume for purposes of that case that it was plain error for the sentencing court to have discharged the jury and made the findings necessary to support the departure sentence. *Id.* This court instead resolved the case based only on the second issue—*i.e.*, whether the Court of Appeals had properly exercised its discretion to correct the error. *Id.* In *Ramirez*, the defendant was convicted of attempted murder and first-degree assault after having shot the victim in the head. The victim survived, but lost an eye. At sentencing, the trial court imposed an upward departure sentence, based in part on the fact that the victim had sustained a permanent injury—a factor, the trial court concluded, that alone was sufficient to support the departure. After assuming that it had been error for the trial court, rather than the jury, to make the factual findings supporting the sentence, this court further concluded that the Court of Appeals should not have exercised its discretion to correct the error:

> "If, as the record reveals, there is *no legitimate debate* that the victim suffered a permanent injury as a result of the shooting, then defendant's interest in a second hearing is minimal, if not nonexistent: A second hearing would only confirm that the departure sentence was warranted. The state, for its part, has a significant interest in avoiding a second, unnecessary sentencing hearing. Viewed in that light, the competing interests of the parties establish that this was not an appropriate case in which to consider defendant's unpreserved error."

*Id.* at 513 (emphasis added).

---

departure sentence. This court concluded that defendant's failure to object to the sentence permitted competing inferences as to whether the defendant waived his right to have a jury decide the facts necessary to support the departure, and that those competing inferences precluded treating the error as "plain."

In *Gornick*, the defendant, in advance of trial, had executed a valid written waiver of his right to a jury trial to decide guilt. The "plain error" question in *Ramirez* was whether the conclusion that this court reached in *Gornick*—*viz.*, that competing inferences could be drawn from defendant's failure to claim at sentencing that he was entitled to a jury trial on the departure findings—should follow in a case in which the defendant, rather than having waived a jury at the outset of the trial, had instead invoked his right to a trial by jury.

After this court remanded this case to the Court of Appeals for reconsideration in light of *Ramirez*, the Court of Appeals began by declining to reconsider whether the sentencing court had committed plain error by discharging the jury and judicially finding the facts on which the departure sentence was based. In that regard, the Court of Appeals noted that *Ramirez* had not disturbed the Court of Appeals' plain error determination; instead, *Ramirez* had reversed only on the conclusion that the Court of Appeals should not have exercised its discretion to reach the error. *Lennon II*, 225 Or App at 321.

Consequently, the Court of Appeals on reconsideration revisited only whether it should exercise its discretion in this case to correct the error. It concluded that it should. *Id.* Its decision in that regard was predicated on its view of what factual inferences are legally required to support a departure sentence on the ground that the trial court relied on in this case—*viz.*, that prior criminal sanctions had failed to deter defendant from further criminal conduct. Relying on its own precedent, the Court of Appeals concluded that "failure to deter" could not be inferred from a defendant's criminal history alone. Rather, a defendant's criminal history must support the further factual inference that the defendant possessed a "malevolent quality" as part of his character:

> "[T]he determination of whether a defendant had been undeterred by prior sanctions involves more than merely recounting the defendant's criminal history. *There also must be evidence that is sufficient to allow a factfinder to draw an inference about 'the malevolent quality of the offender,'* and the failure of probation to serve as an effective deterrent."

*Id.* at 323 (quoting *State v. Allen*, 198 Or App 392, 396, 108 P3d 651, *adh'd to as clarified on recons*, 202 Or App 565, 123 P3d 331 (2005), *disposition withdrawn*, 207 Or App 295, 140 P3d 1135, *rev den*, 342 Or 46 (2006)) (emphasis added). The Court of Appeals thus held that "a finding that a defendant has not been deterred by prior probations or incarcerations depends on inferences about the defendant's personal characteristics and circumstances that are subject to the jury trial right[.]" *Lennon II*, 225 Or App at 322.

■■ Taking guidance from *Ramirez*, the Court of Appeals examined the record in this case to determine if there was "no legitimate debate" as to the inferences that the Court of Appeals believed the factfinder must draw. In particular, the Court of Appeals reviewed defendant's extensive criminal history of prior incarcerations, arrests, other sanctions, and parole and probation violations, most of which were not considered in calculating the presumptive sentence for defendant's current crime of conviction. The Court of Appeals was unable to conclude that there was "no legitimate debate" as to whether the jury would have found the departure factor that the sentencing court relied on. As noted, the court reasoned that determining whether a defendant has been undeterred by prior criminal sanctions required "more than merely recounting the defendant's criminal history" and instead required a further inference "about the malevolent quality of the defendant." In the Court of Appeals' view, "the record here—which consists merely of defendant's criminal history and the state's characterization of defendant's performance while on probation—does not satisfy that standard." *Lennon II*, 225 Or App at 324.[3]

■■ On review, the parties take issue with whether the Court of Appeals correctly determined that, for a departure sentence to be based on "failure to deter," a factfinder must specifically infer that there is a separate "malevolent quality" to defendant's character. The state contends that, as an upward departure sentencing factor, "failure to deter" may be permissibly inferred from the extensiveness and nature of a defendant's history. According to the state, when that inference is drawn, it is a sufficient basis for a departure sentence; a further inference of a separate "malevolent quality" is not

---

[3] The Court of Appeals decision may reflect some misunderstanding of our holding in *Ramirez*. The Court of Appeals appears to have used the "no legitimate debate" standard in *Ramirez* as the test for whether to exercise its discretion to reach the error. That is an incorrect understanding of the holding in *Ramirez*. The "no legitimate debate" criterion, if satisfied, places the error outside the universe of what the Court of Appeals may consider as a discretionary matter. An opposite conclusion—*i.e.*, that there is a legitimate debate about what factual conclusion a jury might reach—means only that the error is one that the Court of Appeals *may* consider; it does not mean that the court must do so. In other words, in the latter circumstance, the Court of Appeals may, in the exercise of its sound discretion, make either choice—*i.e.*, not to reach and correct the error or, alternatively, to reach and correct the error.

required by law, makes little sense, and should be discarded.[4] In response, defendant acknowledges that the phrase "malevolent quality" may be a less-than-ideal way to describe what a factfinder must infer to support a departure sentence in this case. Defendant argues, however, that the Court of Appeals was correct in requiring more than a finding of "failure to deter." Defendant reasons that, under ORS 137.671(2), a sentencing court may impose a departure sentence only if "there are substantial and compelling reasons" for the departure. According to defendant, it is a "truism" that prior criminal sanctions have not deterred a defendant whenever that defendant commits a subsequent crime. Defendant thus argues that something more than a defendant's criminal history is required to establish a "failure to deter" sufficient to provide a substantial and compelling basis for a departure.[5]

This court's decision in *State v. Bray*, 342 Or 711, 160 P3d 983 (2007), provides guidance in resolving the issue framed by the parties' arguments. One of the issues in *Bray* was whether a departure factor—"persistent involvement in similar offenses"—fell within the prior conviction exception to the rule in *Apprendi*. If so, then the factor was not subject

---

[4] The state also presents, as a second question for this court's review, whether the sentencing court committed plain error at all. Specifically, the state asserts that, as this court concluded in *Gornick*, 340 Or 160, and *State v. Perez*, 340 Or 310, 131 P3d 168 (2006), unpreserved *Apprendi/Blakely* claims are susceptible to competing inferences as to whether a defendant may have deliberately failed to raise the claim, and they therefore do not qualify as error apparent on the record. We decline to reach that issue, for two reasons. First, as we have already noted, in remanding this case for reconsideration, we expressly did so citing *Ramirez*, a case in which we declined to resolve the plain error issue and instead considered only whether the Court of Appeals properly exercised its discretion to correct that "assumed" error. In light of the terms of our remand, the Court of Appeals understandably did not revisit its plain error conclusion in this case. Second, and in all events, our reasons for approaching the problem as we did in *Ramirez* remain valid. Statutory changes have diminished the extent to which the issue will arise in future cases, and it remains more expeditious to resolve this case based on whether this is a circumstance in which the Court of Appeals had discretion to correct the perceived error. *See Ramirez*, 343 Or at 512 (discussing those considerations).

[5] Defendant raises several other issues in his brief on the merits, some of which present constitutional challenges to aspects of Oregon's sentencing guidelines. Those additional issues were not raised at sentencing, were not presented to the Court of Appeals, and therefore are not properly before this court. *See* ORAP 9.20(2) (reviewable questions before Supreme Court include all questions properly before the Court of Appeals that the petition or the response claims were erroneously decided by that court).

to the *Blakely/Apprendi* jury trial right; if not, then defendant was entitled to have a jury decide his "persistent involvement in similar offenses" unless he waived a jury trial on the issue.

This court held that, in determining whether the record establishes a defendant's "persistent involvement in similar offenses," a sentencing court "must do more than find that a defendant has two or more prior convictions for similar offenses." *Bray*, 342 Or at 724. Rather, the trier of fact "must infer from the number and frequency of those prior convictions whether the defendant's involvement in those offenses is 'persistent[.]' " *Id.* In determining what "persistent" entails, this court drew from the ordinary understanding of that term—*i.e.*, recurring or continuing. *Id.* (citing dictionary definition). Given the particular record in *Bray*, this court concluded that more than one inference could have been drawn from the defendant's criminal history as to whether his criminal conduct was recurring or continuing because, although defendant had 10 offenses in his criminal history that were similar to his current crime of conviction, all had arisen out of a single prior criminal incident involving two victims. As a result, this court determined that the failure to submit the issue of "persistent involvement" to a jury—which was a preserved claim of error in *Bray*—was not harmless. *Id.*

*Bray* is significant here, because this court required no further inference to support a departure, beyond the inference of "persistent involvement" that a factfinder might permissibly draw from a defendant's criminal history. In contrast, the Court of Appeals had held, in a series of cases that preceded *Bray*, that "persistent involvement" entailed a further inference that defendant's criminal history reflected a "separate malevolent quality" in his character.[6] In the wake of *Bray*, the Court of Appeals recognized that requiring a

---

[6] *See State v. Kennedy*, 113 Or App 134, 137-38, 831 P2d 712 (1992) ("persistent involvement in similar offenses," as ground for departure sentence, was intended to capture "a separate malevolent quality in the offender" represented by repetitive nature of offender's criminal history); *see also State v. Perez*, 196 Or App 364, 372-73, 102 P3d 705 (2004) ("persistent involvement" ground for departure sentence requires factfinder to infer separate malevolent quality, over and above counting the number of offenses in a criminal offender's history).

"separate malevolent quality" to be inferred from a defendant's criminal history placed a "gloss" on the operative departure standard that had no place in the analysis. *State v. Schenewerk*, 217 Or App 243, 247, 174 P3d 1117 (2007), *rev den*, 344 Or 671, 189 P3d 26 (2008). The Court of Appeals acknowledged, instead, that imposing a departure sentence on the ground of "persistent involvement" was more "straightforward." *Id.* at 246. In particular, the factfinder was entitled to determine, from the "number and frequency" of a defendant's prior convictions for similar offenses, whether the defendant's involvement in those offenses was so "continuous or recurring" as to be "persistent." *Id.* at 247; *see also State v. Agee*, 223 Or App 729, 196 P3d 1060 (2008) (same).

We agree with the Court of Appeals' reconsideration of its former "separate malevolent quality" analysis in the context of the "persistent involvement in similar offenses" ground for a departure sentence. A similar analysis applies here. To find a failure to deter, the factfinder must infer that a defendant's prior criminal sanctions should have deterred the defendant from committing the current offense. Whether that inference follows from the defendant's prior criminal sanctions will depend on such factors as the number of past convictions or sanctions, when they occurred, and the kind of crimes that the defendant committed. A finding that those past criminal sanctions have not deterred a defendant from committing further crimes thus requires something beyond a conclusion that a defendant *has* one or more criminal convictions in his past.[7] But a finding of a "separate malevolent quality" is not necessary. If the record supports the factual inference that a defendant's prior criminal convictions or sanctions should have, but did not, deter the defendant from committing his new offense or offenses, that factual finding can, in a proper case, support a departure sentence. It is then for the sentencing court to decide, based on that predicate factual determination, whether there is a "substantial and

---

[7] For example, a defendant might have a 15-year-old conviction for an assault that he committed as a young man during an argument over a girlfriend. Years later, he may have become involved with drugs and have a current conviction for a drug offense. The single 15-year-old assault conviction would be a weak basis for a "failure to deter" inference in such a circumstance.

compelling" reason to impose an upward departure sentence in a particular defendant's case. *See State v. Upton,* 339 Or 673, 681, 125 P3d 713 (2005) (defendant has right under *Blakely* to have jury decide existence of facts that sentencing court then may consider to determine whether substantial and compelling reasons exist to impose sentence that exceeds presumptive range).[8]

In this case, the record of defendant's criminal history provides "no legitimate debate" that prior criminal sanctions have failed to deter defendant from engaging in criminal activity. The presentence report, on which the sentencing court relied, shows that defendant's criminal history spans two decades, without a significant lapse of time between his criminal activities. He has been convicted of 37 criminal offenses; has received supervision terms in 22 cases, and has violated supervision at least 34 times. His parole and probation record includes over 1,500 entries that detail repeated instances of arrest and incarceration, illegal drug use, restraining order violations, failing to report or keep contact with parole and probation officers, and failing to undergo or complete court-ordered drug treatment. What is more, defendant committed the drug offense in this case while awaiting sentencing on a drug-related conviction for which he had been tried only about two weeks earlier. Based on those facts, we conclude that there is no legitimate debate that past criminal sanctions have failed to deter defendant from engaging in criminal conduct. The Court of Appeals erred in reaching a contrary conclusion, based on the erroneous legal premise that the record must also establish that defendant possessed a separate malevolent quality. The Court of Appeals should not have exercised its discretion to correct any error in the imposition of defendant's departure sentence.

The decision of the Court of Appeals is reversed. The judgment of the circuit court is affirmed.

---

[8] Defendant's argument appears in certain respects to take issue with whether the "failure to deter" ground for a departure sentence can, without more, legally constitute "substantial and compelling" grounds for a departure sentence. However, defendant raised no objection to the sentencing court's decision to depart on a "failure to deter" ground. If defendant believed that "failure to deter," once a factual basis for it is found, is nevertheless not a ground that legally supports a departure sentence, he needed to preserve that argument by objecting on that theory at the time of sentencing. Defendant did not do so in this case.