Submitted on remand from the Oregon Supreme Court August 9, affirmed October 20, 2010, petition for review denied February 3, 2011 (349 Or 603)

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## REGGIE PRATT,
*Defendant-Appellant.*

Multnomah County Circuit Court
020130534; A119859

241 P3d 744

Andrew Chilton and Chilton & Galli, LLC, filed the brief for appellant.

John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Tiffany Keast, Assistant Attorney General, filed the supplemental brief for respondent.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Haselton, Judge.

BREWER, C. J.

**BREWER, C. J.**

This case is before us on remand from the Oregon Supreme Court, which vacated our prior opinion, *State v. Pratt*, 227 Or App 364, 206 P3d 273 (2009) (*Pratt II*), in light of *State v. Lennon*, 348 Or 148, 229 P3d 589 (2010). *State v. Pratt*, 348 Or 461, 234 P3d 983 (2010). *Pratt II* was also before us on remand from the Supreme Court after that court vacated our prior decision, *State v. Pratt*, 205 Or App 559, 134 P3d 1053 (2006) (*Pratt I*), in light of *State v. Ramirez*, 343 Or 505, 173 P3d 817 (2007), *adh'd to as modified on recons*, 344 Or 195, 179 P3d 673 (2008), and *State v. Fults*, 343 Or 515, 173 P3d 822 (2007). In *Pratt II*, we concluded that the trial court's imposition of a durational departure sentence on the basis of judicial factfinding was plain error, and we exercised our discretion to correct that error because we could not say that there was no "legitimate debate" that a jury would have found the same departure factor identified by the trial court. *Pratt II*, 227 Or App at 367-68. In light of the Supreme Court's overriding analysis in *Lennon*, we now affirm the trial court's imposition of the durational departure sentence.

Defendant was convicted of four counts of robbery in the first degree and one count of assault in the second degree. The trial court imposed a durational departure sentence of 144 months' imprisonment on one of the first-degree robbery counts, 90 months of which were imposed pursuant to ORS 137.700. The court gave the following reasons for its decision to impose a departure sentence:

"[O]n the Rob I, I am finding grounds to depart. Persistent involvement in behavior that continues to be assaultive, that's when we see [defendant]. * * * The level of violence is escalating—of actual damage and injury is escalating. That is of course concerning.

"He was on supervision at the time this event happened, and not only was he on supervision, but he was on supervision for another robbery. And he's shown himself so far— and I'm talking about behavior, not expression of willingness to change—he has not been receptive to interventions. And I have got to say I don't think he's going to get any more help from the penitentiary than he had available through the Juvenile Court system, and that hasn't worked. So there are departure grounds. * * *

"* * * * *

"[PROSECUTOR]: * * * Your Honor, [defendant] mentioned something that I should bring up. When the Court went through the departure factors, would you find that those departure factors, each of them, would be sufficient to support the departure?

"THE COURT: I listed the ones I thought about.

"[PROSECUTOR]: You listed four, persistent involvement in assaultive behavior.

"THE COURT: Yes.

"[PROSECUTOR]: That alone. Escalation of violence, on supervision for attempted robbery and not receptive to treatment.

"THE COURT: Yes, I think they all are."

Because we considered it to be dispositive, we confined our analysis in *Pratt II* to the departure factor of defendant's probation status at the time he committed his current offenses. Relying on our opinion in *State v. Allen*, 198 Or App 392, 396, 108 P3d 651, *adh'd to as clarified on recons*, 202 Or App 565, 123 P3d 331 (2005), *rev den*, 342 Or 46 (2006), we explained that an upward departure sentence based on a defendant's supervisory status "require[d] further inferences about the malevolent quality of the offender and the failure of his [supervisory] status to serve as an effective deterrent." We concluded that, on the record before us, we could not say that there was "no legitimate debate" that a trier of fact would have drawn that inference. Accordingly, we remanded the case for resentencing. *Pratt II*, 227 Or App at 368.

■    As noted, this case is before us on remand from the Supreme Court for reconsideration in light of that court's opinion in *Lennon*. There, the court rejected our conclusion, based on *Allen*, that the record must establish that there is no "legitimate debate" that a trier of fact would draw the inference that a defendant possessed a "malevolent quality." *Lennon*, 348 Or at 157. Although the court did not consider as a departure factor the defendant's supervision status at the time he committed his current offense, the court's analysis of the "failure to deter" departure factor illuminates what we

now understand to be the proper analysis for the "supervision status" departure factor. As the court explained:

> "To find a failure to deter, the factfinder must infer that a defendant's prior criminal sanctions should have deterred the defendant from committing the current offense. Whether that inference follows from the defendant's prior criminal sanctions will depend on such factors as the number of past convictions or sanctions, when they occurred, and the kind of crimes that the defendant committed. A finding that those past criminal sanctions have not deterred a defendant from committing further crimes thus requires something beyond a conclusion that a defendant *has* one or more criminal convictions in his past. But a finding of a 'separate malevolent quality' *is not necessary*. If the record supports the factual inference that a defendant's prior criminal convictions or sanctions should have, but did not, deter the defendant from committing his new offense or offenses, that factual finding can, in a proper case, support a departure sentence."

*Id.* at 157 (first emphasis in original, second emphasis added; footnote omitted). Applying that principle in this case, we conclude that the dispositive issue is whether defendant was on probation or supervision when he committed his current offense. Here, defendant testified that he had supported himself while on probation for two prior attempted robberies by selling marijuana in downtown Portland; defendant also committed his current offenses—violent robberies—while on probation. We conclude, in light of defendant's testimony, that there is "no legitimate debate" that a trier of fact would have found that defendant committed his current offenses while on probation. Accordingly, although the trial court erred in imposing the durational departure sentence on the basis of its own judicial factfinding, we decline to exercise our discretion to correct that error.

■ That is not the end of our inquiry, however, because, as we explained in *Pratt II*:

> "[T]he trial court did not explicitly state that it was relying on the departure factors that it found, either singly or in combination, and therefore we assume that the court did not consider each factor to be independently sufficient to

support a departure. *State v. Wilson*, 111 Or App 147, 826 P2d 1010 (1992)."

227 Or App at 367.[1] As noted, the trial court identified four departure factors: (1) persistent involvement in similar offenses; (2) defendant's supervision status at the time of the current offense; (3) defendant's escalating pattern of violence; and (4) defendant's not having been receptive to treatment. As explained above, there is no legitimate debate that defendant was on probation at the time of his present offense. We also conclude that there is no legitimate debate that defendant had been persistently involved in similar offenses. With regard to the "persistent involvement" factor, we apply the Supreme Court's analysis set out in *State v. Bray*, 342 Or 711, 724, 160 P3d 983 (2007). There, the court held that "'[p]ersistent involvement in similar offenses' presents a factual issue that * * * a defendant may insist that a jury find beyond a reasonable doubt." As the court explained:

> "In determining whether the record establishes '[p]ersistent involvement in similar offenses,' a sentencing court must do more than find that a defendant has two or more prior convictions for similar offenses. The trier of fact must infer from the number and frequency of those prior convictions whether the defendant's involvement in those offenses is 'persistent'; that is, the trier of fact must determine whether the defendant's involvement in similar offenses is sufficiently continuous or recurring to say that it is 'persistent.'"

*Id.* Here, defendant testified that he had two prior convictions for attempted robbery, both of which occurred in October 2000, and for which defendant was on probation when he committed his present offense—a violent robbery—in January 2002. On this record, we conclude that there is no legitimate debate that a trier of fact would have drawn the inference of persistency required by *Bray*. Accordingly, there is no legitimate debate that a trier of fact would have found that defendant was persistently involved in similar offenses.

---

[1] The state argues that this conclusion is erroneous, relying on the same language from the sentencing colloquy set out above. We need not address the state's argument in light of our conclusion below that no legitimate debate exists as to each of the departure factors identified by the trial court.

As to the final two departure factors, defendant's escalating pattern of violence and defendant not having been receptive to treatment, we do not have a controlling analysis from the Supreme Court, nor have we previously set out a framework for analyzing departures based on those factors. However, the court's analysis in *Lennon* does indicate that we need not conclude that a trier of fact would have drawn any inferences beyond a finding of the departure factor itself. *See id.* at 157. Thus, in determining whether there is a legitimate debate regarding whether a trier of fact would have found the same departure factors relied on by the trial court, we examine the strength of the evidence supporting that departure fact. *Cf. State v. Martina*, 227 Or App 13, 16, 205 P3d 87, *rev den*, 346 Or 590 (2009) (finding no legitimate debate that jury would have found that defendant was under supervision at the time of his present crime where the defendant committed multiple violent assaults and manslaughter while on probation for an assault conviction).

We conclude that there is no legitimate debate that a trier of fact would have found that defendant's prior criminal acts and convictions demonstrated an escalating pattern of violence. Defendant committed his present crimes at age 19; at age 15, he threw a brick at the head of another child; and at age 17, he committed two attempted robberies. Similarly, the record here also establishes that there is no legitimate debate that a trier of fact would have found that defendant had not been receptive to treatment. The trial court explained its reliance on that sentencing factor when it stated:

> "[H]e's shown himself so far—and I'm talking about behavior, not expression of willingness to change—he has not been receptive to interventions. And I have got to say I don't think he's going to get any more help from the penitentiary than he had available through the Juvenile Court system, and that hasn't worked. So there are departure grounds."

The pertinent evidence in the record with regard to that factor came from Dr. Colistro, who evaluated defendant in order to ascertain whether defendant was a "dangerous offender" under ORS 161.737. At defendant's sentencing hearing, the prosecutor engaged Colistro in the following colloquy:

"Q   In reviewing the defendant's history, did you note whether or not he had been given opportunities to address his anger issues and his substance abuse issues and his cognitive difficulties with treatment?

"A   Yes.

"Q   And was there anything in those records regarding the defendant's amenability to treatment, his willingness to engage in treatment?

"A   Yes.

"Q   And what was that?

"A   His attitude generally has been that he is not going to participate because he does not view himself as needing that kind of program.

"Q   Have you reviewed the defendant's performance while under supervision?

"A   Yes.

"* * * * *

"Q   And what was that?

"A   He consistently acts as if he's not under supervision. As soon as he's back in the community, he resumes the same lifestyle that he assumed prior to incarceration. He associates with the same sorts of people, use of drugs and gets involved in the same sorts of crimes."

Defendant presented no countervailing evidence.[2] From the foregoing, we conclude that there is no legitimate debate that a trier of fact would have found that defendant had not been receptive to treatment.

In conclusion, there is no legitimate debate that a trier of fact would have found each of the four departure factors relied on by the trial court. Consequently, we affirm.

Affirmed.

---

[2] Defendant did testify that he intended to obtain treatment in the future; however, that testimony did not contradict Colistro's testimony regarding defendant's *previous* receptiveness to treatment.