TOOKEY, J.
*506 *852 Defendant appeals a judgment of conviction for eight counts of felony public indecency, ORS 163.465(2)(b), raising five assignments of error. We write only to address defendant's first assignment of error, in which he argues that the trial court erred in declining to give defendant's special jury instruction on eyewitness identifications, and reject without discussion defendant's remaining assignments of error. For the reasons that follow, we affirm.
Defendant was charged with eight counts of public indecency. At trial, the state called seven female witnesses; each witness testified to similar circumstances concerning her encounter with defendant.
Each witness worked at a different drive-through service window of a coffee or fast-food restaurant. In each instance, defendant pulled up to the drive-through window. As defendant approached the window, each witness saw a partially clothed white man. Defendant, who was masturbating in the front seat of his car, stared at each witness without speaking.
Several witnesses testified that they distinctly remembered defendant's eyes. In some of the encounters, defendant obscured his face with his hand or hat. Several witnesses testified that defendant had light hair, was over-weight, and was in his late thirties to mid-fifties. Several witnesses testified that defendant drove a sedan with no visible license plate and that its headlights were off. The length of the encounters varied from three seconds to two minutes.
As part of an investigation, several witnesses were asked to participate in a "photo throw-down."[1] Before each photo throw-down, each witness signed a statement agreeing that she would review all of the photographs before making any comment. The statement also instructed each witness that she was not required to identify anyone. In *853 each instance, the police officer who administered the photo throw-down did not have a connection with the case or knowledge of who was in the photographs.
During a photo throw-down, B-who had encountered defendant on two separate occasions-positively identified defendant as the man she had encountered at her drive-through window. B identified defendant in less than twenty seconds and B told the police officer that she was 100 percent sure that defendant was the man whom she had witnessed masturbating. B also began physically shaking upon seeing defendant's photograph. Two other witnesses, C and E, were unable to identify anyone in the photo throw-down.
A, on the other hand, saw defendant's photograph in a news article; and recognized him as the man who had masturbated in front of her at the drive-through window where she worked. Based on that, A contacted the police. A testified that, upon seeing defendant's photograph in the news article, she had no doubt that defendant was the perpetrator. A identified defendant in court and testified that she was 100 percent sure that he was the man whom she had witnessed masturbating.
Before the case was submitted to the jury, defendant requested a special jury instruction regarding eyewitness identifications, citing State v. Lawson/James , 352 Or. 724, 291 P.3d 673 (2012). Defendant's requested jury instructed stated:
"You have heard witnesses testify about eyewitness observations and identifications of a person. You should consider, among other things, the following factors in evaluating eyewitness testimony: (1) Whether information given to the witness or suggested *507 by questions put to the witness intentionally or unintentionally may have played a part in the witness's recollection of his or her observations; (2) Whether the witness heard the opinions or information offered by other witnesses about the event or actors in it and thus was influenced by those opinions; (3) Whether the passage of time after the event reduced the reliability of the memory when reported; (4) Whether the witness had an opportunity to observe what the witness described or whether the witness's observation was limited by the brevity of the event, by the distance from which the witness *854 observed, whether the witness's view was obscured, or other factors interfering with the witness's ability to observe. You should consider these factors along with all the testimony and exhibits in determining whether each witness's identification is reliable and believable or not. State v. Lawson , 352 Or. 724, 291 P.3d 673 (2012)."
In response to defendant's proposed instruction, the state argued not that defendant's proposed instruction was incomplete or biased but, instead, that no special instruction on eyewitness identification was appropriate at all, and that the uniform instruction sufficed on the issue. The trial court apparently agreed, declining to give any special instruction, and defendant was subsequently found guilty of all of the charged counts.
On appeal, however, defendant does not assign error to the trial court's decision to give the uniform instruction to the jury. Rather, defendant's sole assignment of instructional error is that the trial court erred in failing to give his special jury instruction on eyewitness identifications. We therefore write only to address whether defendant's proposed instruction was a correct statement of the law, and do not reach the question whether the uniform instruction is adequate to address the principles established in Lawson/James .[2]
"We review a trial court's refusal to give a requested jury instruction for error as a matter of law, and we review the evidence in support of the instruction in the light most favorable to [the] defendant, the party seeking the instruction[.]" State v. Marsh , 186 Or. App. 612, 614, 64 P.3d 1141, rev. den. , 335 Or. 655, 75 P.3d 899 (2003) (internal quotation marks and citation omitted).
*855 A defendant is entitled to have the jury instructed in accordance with his theory of the case "if the instruction correctly states the law and there is evidence to support giving it." State v. McNally , 361 Or. 314, 320, 392 P.3d 721 (2017).
"The parties to any jury case are entitled to have the jury instructed in the law which governs the case in plain, clear, simple language. The objective of the mold, framework and language of the instructions should be to enlighten and to acquaint the jury with the applicable law. Everything which is reasonably capable of confusing or misleading the jury should be avoided. "
Williams v. Portland General Elec. Co. , 195 Or. 597, 610, 247 P.2d 494 (1952) (emphasis added). Further, a trial court does not err in refusing to give an instruction if that instruction, as requested, "destroys the neutral form that instructions should have." St. Paul Mercury Ins. Co. v. Baughman , 61 Or. App. 534, 538, 657 P.2d 1254, rev. den. , 295 Or. 259, 668 P.2d 381 (1983).
We conclude that, in this case, the trial court did not err in declining to give defendant's requested special jury instruction. Defendant's requested instruction emphasized certain Lawson/James factors that bolstered his case, while omitting other relevant factors *508 that were less favorable to his case.[3] In so doing, defendant culled factors that had the tendency to create an inference that the eyewitness testimony was unreliable, thereby creating an unbalanced understanding of how the jury should consider eyewitness testimony concerning observations and identification. In other words, set forth as a test for examining eyewitness testimony in general, the few factors drawn from Lawson/James did not result in an instruction that was neutral; it resulted, instead, in an instruction that was reasonably capable of misleading the jury.
A special instruction drawn from Lawson/James should not take a position on the effect of each of the estimator variables in a particular case; the instruction should list the factors in an objectively neutral, non-argumentative way. An explanation of the effects of those factors is best left to argument by counsel, cross-examination of the eyewitness, *856 and expert testimony, thus "informing factfinders of the pit-falls of eyewitness identification" without improperly usurping the role of the jury. Lawson/James , 352 Or. at 759, 291 P.3d 673. As the court in Lawson/James explained,
"[W]e anticipate that when the facts of a case reveal only issues regarding estimator variables * * * defendants will likely * * * probe the issues regarding estimator variables through cross-examination, and * * * educate the factfinder about the potential effects of relevant estimator variables on the accuracy of eyewitness identification by using expert testimony and case-specific jury instructions."
Id . at 762-63, 291 P.3d 673 (emphasis added); see id . at 759-61, 291 P.3d 673 (discussing how "expert testimony is one method by which the parties can educate the trier of fact concerning variables that can affect the reliability of eyewitness identification" because many of the factors listed are unknown to the average juror).
For example, the court in Lawson/James described the factor concerning memory decay objectively: "Memory generally decays over time. Decay rates are exponential rather than linear, with the greatest proportion of memory loss occurring shortly after an initial observation, then leveling off over time." 352 Or. at 746, 291 P.3d 673. However, defendant's requested instruction based on that factor told the jury to consider "[w]hether the passage of time after the event reduced the reliability of the memory when reported[.]" (emphasis added).
Similarly, another portion of defendant's requested instruction was based on two other factors enumerated in Lawson/James as follows:
"3. Duration of Exposure
"Longer durations of exposure (time spent looking at the perpetrator) generally result in more accurate identifications.
"4. Environmental Viewing Conditions
"The conditions under which an eyewitness observes an event can significantly affect the eyewitness's ability to perceive and remember facts regarding that event. The basic environmental conditions of distance and lighting, combined with any aspect of the viewing environment-fog, *857 heavy rain or weather conditions, cracked or dirty windows, glare, reflection, shadow, or even physical obstructions within the witness's line of sight-can potentially impair an eyewitness's ability to clearly view an event or a perpetrator."
352 Or. at 744-45, 291 P.3d 673. However, defendant's requested instruction concerning those factors provided that the jury should consider "[w]hether the witness had the opportunity to observe what the witness described or whether the witness's observation was limited by the brevity of the event, by the distance from which the witness observed, whether the witness's view was obscured , or other factors interfering with the witness's ability to observe ." (emphases added).
As requested, then, the instruction set forth factors in a way that drew the jury's attention to certain factors bearing on the lack of reliability of eyewitness testimony.
*509 See State v. Francis , 284 Or. 621, 626, 588 P.2d 611 (1978) ("A requested instruction is always properly refused unless it ought to have been given in the very terms in which it was proposed."). Regarding defendant's theory that the eyewitness testimony had the potential to be flawed, that issue was not undisputed; indeed, the state had offered that evidence to prove that it was defendant who had masturbated in front of the victims. See Brooks v. Bergholm , 256 Or. 1, 8-9, 470 P.2d 154 (1970) ("An instruction which assumes the existence of a controverted fact is not free from fault, and refusal to give it would not be error."); State v. Rainey , 298 Or. 459, 467, 693 P.2d 635 (1985) ("It is the task of the advocate, not the judge, to comment on inferences."). Because defendant's requested instruction selected certain Lawson/James factors that related to the negative effects of the perception of eyewitness testimony, and because those factors were not appropriately cabined to objectively evaluate the eyewitnesses' identification of defendant, the instruction was unduly slanted toward defendant's view of the evidence as a whole. Thus, the trial court did not err in declining to give defendant's requested instruction.
Affirmed.

Based on the testimony of the police officer who administered the "photo throw-down," we understand that procedure included reading a "photographic admonishment" to each witness before showing her six full-page photographs.

We note that Lawson/James itself implies the contrary:
"[G]eneralized jury instructions-frequently are not adequate to inform factfinders of the factors affecting the reliability of such identifications. See State v. Guilbert , 306 Conn. 218, 49 A.3d 705 (2012) (finding that scientific research on the reliability of eyewitness identifications enjoys strong consensus in the scientific community, that many factors affecting eyewitness identifications are unknown to average jurors or are contrary to common assumptions, and that cross-examination, closing argument, and generalized jury instructions are not effective in helping jurors spot mistaken identifications)."
Lawson/James , 352 Or. at 759-60, 291 P.3d 673 (emphasis added).

The Lawson/James factors-viz. , the "system variables" and "estimator variables"-are set out at 352 Or. at 741 to 746, 291 P.3d 673.