656 January 28, 2026 No. 37

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

COREY ALAN BOCK,
*Defendant-Appellant.*

Washington County Circuit Court
17CR41800; A180670

Eric Butterfield, Judge.

Argued and submitted January 10, 2025.

Bear Wilner-Nugent argued the cause and filed the briefs for appellant.

Timothy A. Sylwester, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, Powers, Judge, and Pagán, Judge.

PAGÁN, J.

Affirmed.

**PAGAN, J.**

Defendant appeals from a judgment of conviction for three counts of unlawful use of a weapon with a firearm (UUW),[1] ORS 166.220, ORS 161.610 (Counts 1-3); one count of attempted murder in the second degree with a firearm, ORS 161.405, ORS 163.115, ORS 161.610 (Count 4); and one count of felon in possession of a firearm with a firearm (FIP), ORS 166.270, ORS 161.610 (Count 7). Defendant raises four assignments of error, arguing that the court erred by (1) not providing the jury with defendant's requested special self-defense instruction; (2) not merging Counts 1 and 4; (3) imposing an upward departure sentence based on the finding that prior criminal sanctions had not deterred defendant; and (4) imposing consecutive sentences for Counts 4 and 7. Defendant's arguments on each assignment of error are unavailing. First, the trial court did not err because the uniform self-defense jury instructions given conveyed the same information as defendant's requested instruction. Second, the trial court did not err because the conduct underlying the two charges was separated by a sufficient pause. Third, the trial court did not err because the record contains sufficient evidence to support the finding that prior criminal sanctions had not deterred defendant. Last, defendant has not developed an argument as to why Article I, section 44(1)(b), of the Oregon Constitution does not allow the trial court to impose consecutive sentences when the charges involved different victims. Because we determine that the trial court did not err, we affirm.

## I. BACKGROUND

Because defendant was convicted, the facts are presented in the light most favorable to the verdict. *State v. Johnson*, 342 Or 596, 598, 157 P3d 198 (2007), *cert den*, 552 US 1113 (2008). The evidence at trial, which was based primarily on witness testimony, provided the following account of events.

On the night of May 22, 2017, the victim, AC, and his daughter arrived home following a friend's funeral. As they

---

[1] Defendant was found guilty of unlawful use of a weapon with a firearm on these three counts as a lesser included offense of attempted aggravated murder.

were getting out of the car, AC noticed headlights down the street and then heard an engine roaring as a car he did not recognize came up to AC's neighbor's house. AC, standing next to his car with the door open, watched the approaching car. A man, whom AC identified as defendant, and a Latino man, later identified as J,[2] walked up and verbally confronted AC, who told his daughter to run inside. Defendant punched AC in the face and pulled out a gun. During this altercation, AC stated that he had a small handgun and told defendant to get off AC's property or he would have to shoot. The handgun was small enough that it remained concealed in his hand. When defendant punched him again and did not leave, AC dropped the handgun, pushed past defendant, and tried to run away but slipped in the driveway and fell. Defendant shot at AC with defendant's gun and missed.

AC then ran around the side of the house and fell to the ground. While he was on the ground, J caught up to him and started punching him and tearing at his hair. At that time, AC's housemate, TM, came out of the house to assist AC, at which point defendant hit TM on the head with a gun. Defendant and J ran off shortly after, back towards their car.

AC went with TM to recover his handgun from the driveway. AC retrieved his handgun and then went around to the front of his work van to see where defendant had gone. Defendant and J were at their car, yelling in frustration. WH, AC's other housemate, then came outside while on the phone with 9-1-1. She tripped on the curb. Defendant then shot several times into the air, then several more times in AC, TM, and WH's direction but missed them. AC fired a shot from his handgun back at defendant.

AC, TM, and WH ran back to the house, and defendant followed, still holding his gun. As they were trying to open the door, AC shot at defendant, hitting defendant in the foot. When they managed to get into the house, they tried to close the door against defendant, who got his foot and hand through the door. Defendant was pushed out of the way, and the door was locked. Defendant then tried to come in

---

[2] J was defendant's codefendant at trial (Case No. 17CR46509) and is not a party to this appeal.

through a different door, hitting it repeatedly with a shovel and trying to wedge it open. As police started to arrive on the scene, defendant and J ran away from the house. Police apprehended defendant shortly after.

Defendant was indicted on three counts of attempted aggravated murder with a firearm (Counts 1, 2, and 3), attempted murder with a firearm (Count 4), assault in the second degree (Count 5), burglary in the first degree (Count 6), felon in possession of a firearm with a firearm (Count 7), and interfering with a peace officer (Count 8).

Significantly for our analysis, this is defendant's second trial, taking place after we reversed defendant's convictions on several counts in *State v. Bock*, 310 Or App 329, 485 P3d 931 (2021) (*Bock I*).[3] In the first trial, the trial court gave jury instructions which permitted the jury to assess defendant's self-defense claim from the victim's perspective and, if it found that the victim's use of force was lawful, find defendant had not acted in self-defense. *Id.* at 342. We held that the jury instructions misstated the law, explaining that "whether or not the victim was actually justified in using force is equally irrelevant in evaluating a self-defense claim under ORS 161.215(2) as it is under ORS 161.209." *Id.* at 343. We remanded for a new trial on Counts 1, 2, 3, 4, 5, and 7. *Id.* at 345.

During the second trial, defendant requested a special jury instruction stating, "A claim of self-defense is evaluated only from the perspective of [defendant]," invoking our holding in *Bock I*. *Id.* at 343. The trial court rejected defendant's instruction, instead using the uniform jury instructions for self-defense. Defendant was convicted of the lesser included offense of unlawful use of a weapon on Counts 1, 2, and 3;[4] attempted murder in the second degree on Count 4;

_____

[3] In *Bock I*, we affirmed defendant's convictions on Count 6 (burglary in the first degree, ORS 164.225) and Count 8 (interfering with a peace officer, ORS 166.247). 310 Or App at 344. Thus, only Counts 1, 2, 3, 4, 5, and 7 were at issue during the second trial from which this appeal is taken.

[4] UUW is not generally a lesser included offense of attempted aggravated murder, because it requires proof of the use of a "dangerous or deadly weapon," which is not an element of attempted aggravated murder. However, in cases such as this one in which the counts of attempted aggravated murder included that defendant used a firearm as an additional material element, UUW may be a lesser included offense as it was here. *See* ORS 161.610(2) (use or threatened use

felon in possession of a firearm with a firearm on Count 7;[5] and acquitted of assault in the second degree on Count 5.

At sentencing, the court imposed an upward departure when sentencing defendant for attempted murder, sentencing him to 144 months' imprisonment. The court based its departure entirely on its finding that the state had sufficiently proved the enhancement factor that prior criminal sanctions had not effectively deterred defendant. Additionally, the court imposed consecutive sentences for Counts 1, 2, 3, 4, 6, and 7, for a total sentence of 240 months. Defendant timely appealed.

## II.   ANALYSIS

### A.   *Refusal to Give Defendant's Special Jury Instruction*

In his first assignment of error, defendant asserts that the trial court erred by not providing the jury with his requested special jury instruction that stated: "A claim of self-defense is evaluated only from the perspective of [defendant]." We disagree.

We "review a trial court's refusal to give a requested jury instruction for error of laws." *State v. McNally*, 361 Or 314, 320, 392 P3d 721 (2017). "In reviewing the trial court's refusal to give a requested instruction, we view the record in the light most favorable to establishment of the facts necessary to require that instruction." *State v. Egeland*, 260 Or App 741, 742, 320 P3d 657 (2014).

In general, jury instructions must explain the law clearly so jurors can carry out their function, and thus, the court errs if it gives an instruction that is misleading or overly confusing. *State v. Martin*, 290 Or App 851, 855, 417 P3d 505 (2018). Additionally, a court must instruct the jury on the defendant's theory of the case so long as it correctly states the law and there is evidence to support it. *McNally,* 361 Or at 320. However, it is not error for the trial court to

---

of a firearm may be pleaded in the accusatory instrument and proved at trial as an element of aggravation).

   [5] The FIP count is Count 7 on the original indictment but is also sometimes referred to as Count 6 in the record because only six counts (1, 2, 3, 4, 5, and 7) were remanded for a new trial. We therefore refer to the count as "Count 7" for clarity and consistency.

refuse to give a defendant's requested instruction if it adds nothing to the instructions the court has already provided. *State v. Montez*, 309 Or 564, 600-01, 789 P2d 1352 (1990).

Here, defendant argues that his proposed special instruction was necessary to ensure that the jury did not improperly consider the victim's perspective when evaluating defendant's self-defense claim. While we acknowledge that defendant's proposed jury instruction accurately states the law, the uniform jury instructions the court provided already communicated the substance of defendant's requested instruction. The instructions the trial court gave repeatedly instructed the jury to consider defendant's reasonable beliefs, providing in relevant parts:

> "A person is justified in using physical force on another person to defend himself from *what he reasonably believes to be* the use or imminent use of unlawful physical force. In defending, the person may only use that degree of force which *he reasonably believes to be necessary.*
>
> "* * * * *
>
> "The defendant is not justified in using deadly physical force on another person unless *he reasonably believed* that the other person was committing or attempting to commit a felony involving the use or threatened imminent use of physical force against a person or using or about to use unlawful deadly physical force against defendant or another person."

*See* UCrJI 1107, 1108 (emphasis added). That language instructed the jury to consider defendant's reasonable beliefs, and unlike the instruction in *Bock I*, the given instructions do not imply that any other perspective is relevant to the inquiry. Thus, the substance of defendant's requested instruction was sufficiently communicated without providing the special instruction.

Defendant nevertheless claims that his special instruction should have been given because it provided needed clarity and would prevent possible confusion over what perspectives the jury could consider. We are unpersuaded by that argument because defendant fails to show that the instructions given by the trial court required clarification. Defendant argues that the jury could have been

confused because there was no direct statement about whose perspective it was to consider and that the information was instead "buried within a larger statement about defendant's reasonable belief regarding the use of force \*\*\*." Defendant additionally claims that the given jury instructions were a "dense wall of instructive material" and that the relevant information about defendant's belief was "just one clause within a complex sentence which [was] in turn contained within many paragraphs \*\*\*." But a complex sentence or paragraph is not inherently *overly* confusing such that it would make the refusal to give a clarifying instruction erroneous. Moreover, defendant incorrectly claims that there was only a single clause instructing jurors to consider defendant's reasonable beliefs, when, as reproduced above, such language appeared three times in the combined jury instructions, further undermining defendant's argument that the instructions given were not sufficiently clear. The trial court did not err by declining to give defendant's special jury instructions.

## B.  *Merger of Counts 1 and 4*

In his second assignment of error, defendant argues that the trial court erred by not merging the guilty verdict for UUW against AC (Count 1) with the guilty verdict for attempted murder of AC (Count 4). We disagree.

ORS 161.067(3) provides that "[w]hen the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim[,] \*\*\* each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." A sufficient pause "means a temporary or brief cessation of a defendant's criminal conduct that occurs between repeated violations and is so marked in scope or quality that it affords a defendant the opportunity to renounce his or her criminal intent." *State v. West-Howell*, 282 Or App 393, 397, 385 P3d 1121 (2016), *rev den*, 361 Or 312 (2017) (internal quotations removed).

Whether a pause is "sufficient" to allow for multiple convictions is a question of law. *State v. Ballangrud*, 338 Or App 701, 716, 568 P3d 209 (2025). The duration and nature of any intervening events are questions of fact, and therefore, we are bound by the findings of the trier of fact, provided that they are supported by constitutionally sufficient evidence. *Id.*

In determining whether a sufficient pause occurred, a court considers the length of the pause, what happened during the pause, and qualitative differences in the defendant's criminal conduct during the pause. *Id.* For example, in *Ballangrud*, we concluded that a sufficient pause had occurred between two instances of sexual abuse because the first instance of touching occurred on the living room couch, there was a pause during which the defendant moved the victim to her bedroom, and then the second instance of touching occurred. *Id.* We explained that there was a sufficient pause because there was a "temporal break between the conduct on the couch and the conduct in the bedroom, including qualitatively different conduct occurring between the two acts." *Id.* at 717. We concluded that the pause was sufficient even though the record did not reflect the amount of time between the two acts. *Id.*

Here, defendant argues that the trial court erred by not merging the guilty verdict on Count 1 (UUW) with Count 4 (attempted murder) because, in the context of this case, UUW was a lesser included offense of attempted murder.[6] We disagree because the two shootings constituting the two convictions were separated by a sufficient pause.

There was a sufficient pause between the two instances of shooting, during which defendant had the opportunity to renounce his criminal intent. Between the two instances of shooting, there were several notable intervening events: AC managed to briefly get away, J chased after him and attacked AC while TM and WH came out of AC's house, and defendant and J returned to their car and appeared to be frustrated trying to open it. Like in *Ballangrud*, in which there was a sufficient pause when

---

[6] As discussed above, while UUW is generally not a lesser included offense of attempted murder, here UUW was a lesser included offense in Counts 1, 2, 3, and 4.

the defendant engaged in qualitatively different conduct between the two violations (moving the victim to another room), here, the two incidents of shooting were separated by defendant and AC changing locations, new people becoming involved in the situation, and defendant and J retreating temporarily. Furthermore, it was only when defendant and J had returned to their car and realized that AC and the other members of the household had come around the house that defendant shot again at AC and the others. Therefore, the difference in location and the nature of the intervening actions indicate that there was a sufficient pause between the conduct underlying Count 1 and Count 4.

Nevertheless, defendant argues that the refusal to merge the guilty verdicts was error because the entire incident took only a few minutes and was one continuous, escalating shootout. We find this argument unavailing for two reasons: (1) the events occurring during the pause are more important than the duration of the pause, and (2) defendant reduces several qualitatively different factual events to "a series of intertwined and interrelated actions."

First, we have found sufficient pauses to exist in cases with short timeframes. *See, e.g., State v. King*, 261 Or App 650, 656, 322 P3d 597 (2014) (holding that there was a sufficient pause between assaults because the victim managing to briefly subdue the defendant between the two attacks was "something of significance" which gave defendant the chance to renounce his criminal intent). Our reasoning in *Ballangrud* applies here. In that case, in which the record did not specify the timeframe over which the events occurred, the more salient consideration was whether the conduct between two violations of the same statutory provision was qualitatively distinct from the conduct underlying the violations. *See Ballangrud*, 338 Or App at 716. Picking up and relocating the victim in that case was qualitatively different conduct, and thus, it did not matter that that conduct might have only taken a short time. Here, defendant's focus on the brevity of the entire confrontation is misplaced.

Second, defendant's reductive characterizations of the incident as "a series of intertwined and interrelated actions" and "an interconnected series of steadily escalating

actions and reactions from defendant and the victims" do not address the underlying factual events, instead painting over any qualitative differences with conclusory statements. Most notably, defendant does not address that defendant and J at one point ceased being on the offensive and returned to their car, only to start shooting again shortly after. If merely moving the victim from one location to another was enough to constitute a sufficient pause in *Ballangrud*, then it follows that a total cessation of conflict, even if the conflict resumed later at a different location, is similarly a sufficient pause which would prevent Counts 1 and 4 from merging. The trial court did not err by entering separate convictions on Counts 1 and 4.

C.  *Upward Departure Sentence*

Defendant claims that the trial court erred by departing from a presumptive sentence under the sentencing guidelines, sentencing him to 144 months for his attempted murder conviction, because there was insufficient evidence to support the finding that prior criminal sanctions had failed to deter him. Defendant argues that his limited criminal history was insufficient evidence to support the factual finding underlying that enhancement factor as a matter of law. We disagree.

The court may impose an upward departure from a presumptive sentence if it finds substantial and compelling reasons warrant such a departure. OAR 213-008-0001. One factor courts have relied on is that prior criminal sanctions have not deterred the defendant. *See, e.g., State v. Lennon*, 348 Or 148, 157, 229 P3d 589 (2010). It is not enough that the defendant has faced criminal sanctions before, but the court must find that the prior sanctions *should* have deterred the criminal activity for which the defendant has been convicted. *See id.* The court considers factors such as the number of criminal sanctions that the defendant has faced before, when they occurred, and how similar they are to the current criminal sanctions the defendant presently faces. *Id.* "If the record supports the factual inference that a defendant's prior criminal convictions or sanctions should have, but did not, deter the defendant from committing his

new offense or offenses, that factual finding can, in a proper case, support a departure sentence." *Id*.

Here, the trial court imposed an upward departure, basing its decision entirely on the basis that prior criminal sanctions did not deter defendant. During the hearing on that enhancement factor, the state introduced evidence to support, as relevant here, that prior criminal sanctions should have but did not deter defendant from the criminal conduct at issue. The evidence included 23 juvenile referrals from defendant's juvenile adjudicative record, his prior adult indictment and conviction for second-degree robbery, his disciplinary history while in jail, and testimony from his post-prison supervisor that the crimes charged in this case occurred while he was on post-prison supervision for second-degree robbery. The extent of defendant's criminal history, that defendant committed the crimes at issue while still on post-prison supervision for a different crime, and the similarly assaultive nature of robbery to the crimes here sufficiently support the court's finding that defendant's prior criminal sanctions had not deterred him.

In contrast, defendant argues that the evidence is insufficient because his criminal record is less extensive and severe than the criminal records of the defendants in prior cases in which the same enhancement factor was used as a basis for an upward departure. Defendant specifically relies on *Lennon* and *State v. Jimenez*, 318 Or App 221, 506 P3d 500, *rev den*, 369 Or 785 (2022). In *Lennon*, the defendant's criminal record included more than 37 convictions for criminal violations, at least 34 violations of supervision terms, and "repeated instances of arrest and incarceration, illegal drug use, restraining order violations, failing to report or keep contact with parole and probation officers, and failing to undergo or complete court-ordered drug treatment." *Lennon*, 348 Or at 158. In *Jimenez*, the defendant had 12 criminal convictions, four of which were "for assaultive 'person' crimes," and 17 arrests for parole violations. *Jimenez*, 318 Or App at 222-23. While it is true that the defendants in those cases did have more extensive criminal records, those cases do not stand for the proposition that if a defendant had a less extensive record, the factor would not apply. The court

did not err in making an upward departure in its sentence for attempted murder.

### D.   *Consecutive Sentences*

Defendant claims in his last assignment of error that the court improperly imposed consecutive sentences for Counts 4 (attempted murder) and 7 (FIP). Article I, section 44(1)(b), of the Oregon Constitution provides, "No law shall limit a court's authority to sentence a criminal defendant consecutively for crimes against different victims." Here, defendant conceded at oral argument that the victims of the two crimes were different, with the victim of the attempted murder charge being AC, and the victim of the FIP charge being the public. Because defendant does not develop an argument as to why Article I, section 44(1)(b), does not apply here, we conclude that the trial court did not err.

## III.   CONCLUSION

First, the trial court did not err by not providing defendant's special self-defense jury instruction because the uniform instructions it gave implied the same information. Second, the trial court did not err by not merging Count 1 into Count 4 because there was a sufficient pause between the conduct underlying each charge. Third, the trial court did not err in imposing an upward departure sentence in sentencing defendant because sufficient evidence supports the court's finding that prior criminal sanctions did not effectively deter defendant. Last, the trial court did not err in entering consecutive sentences for Counts 4 and 7 because the two violations had different victims, AC and the public respectively.

Affirmed.