Argued and submitted November 1, 2006, decision of Court of Appeals affirmed; judgment of circuit court reversed, and case remanded for resentencing June 1, 2007

STATE OF OREGON,
*Respondent on Review,*

*v.*

ROBERT WAYNE BRAY,
*Petitioner on Review.*

STATE OF OREGON,
*Petitioner on Review,*

*v.*

ROBERT WAYNE BRAY,
*Respondent on Review.*

(CC 02022413C; CA A120293; SC S52251 (Control), S52367)

160 P3d 983

Ernest G. Lannet and Joshua B. Crowther, Deputy Public Defenders, Salem, argued the cause and filed the briefs for petitioner on review/respondent on review Bray. With them on the briefs were Peter Ozanne, Executive Director, and Peter Gartlan, Chief Defender, Office of Public Defense Services.

Jonathan H. Fussner and Robert M. Atkinson, Assistant Attorneys General, Salem, argued the cause and filed the briefs for respondent on review/petitioner on review State of Oregon. With them on the briefs were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before De Muniz, Chief Justice, and Carson, Gillette, Durham, Balmer, Kistler, and Walters, Justices.**

KISTLER, J.

** Carson, J., retired December 31, 2006, and did not participate in the decision of this case. Linder, J., did not participate in the consideration or decision of this case.

**KISTLER, J.**

This case presents two issues. The first is whether the statutory prohibition against possessing child pornography[1] with the intent to print or display it requires proof that the person also intended to disseminate it. The second issue is whether a sentencing enhancement factor—"[p]ersistent involvement in similar offenses"—comes within the prior conviction exception to the rule in *Apprendi v. New Jersey*, 530 US 466, 120 S Ct 2348, 147 L Ed 2d 435 (2000). On the first issue, the Court of Appeals held that the prohibition against possessing child pornography with intent to print it does not require proof of an intent to disseminate it. *State v. Bray*, 197 Or App 12, 19, 104 P3d 631 (2005). On the second issue, the court held that "persistent involvement" requires resolution of a factual issue that takes it out of the prior conviction exception to *Apprendi*. *Id.* at 20. We allowed review to consider those issues and now affirm the Court of Appeals decision.

Because this case arises on defendant's motion for a judgment of acquittal, we set out the facts in the light most favorable to the state. *State v. Wolleat*, 338 Or 469, 471, 111 P3d 1131 (2005). Some of the inmates at the Snake River Correctional Institution work at a call center located within that institution. Those inmates use computers in the course of their work but may not use the Internet. One of the inmates used a supervisor's password to gain access to the Internet, where he downloaded programs and may have participated in chat rooms. After prison officials intercepted a personal letter that the inmate had printed while working at the call center, they began to investigate his and other inmates' use of their computers.

In the course of that investigation, the prison officials discovered that defendant had used another supervisor's password to gain access to the Internet. They also discovered that defendant had visited Internet websites that

---

[1] ORS 163.684 and ORS 163.686 prohibit certain acts regarding "any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child." For convenience, we use the phrase "child pornography" to refer to that material.

appeared from their domain names to be related to child pornography.[2] When confronted, defendant admitted visiting child pornography websites but insisted that he had done so only for legal research purposes. A search of defendant's computer revealed 11 images of sexually explicit conduct involving children. Defendant had saved four of those images to a folder labeled "CP" on the allocated space on the hard drive of his computer.[3] The officials discovered the other seven images on the unallocated space on the hard drive. They also found letters that defendant had written to children and women in other countries and believed that defendant had access to an e-mail account. A search of defendant's cell revealed "a lot of pornography pictures, nudist colony magazines, and several catalogs of little girls in formal dress attire." The search also revealed pictures of children that were not pornographic but, as the trial court put it, were "relevant to show interest in children in a—in general."

Based on the 11 images of child pornography found on defendant's computer, the state charged him with 11 counts of first-degree encouraging child sexual abuse, ORS 163.684, and 11 counts of second-degree encouraging child sexual abuse, ORS 163.686. Each count of the first-degree offense alleged that defendant knowingly had possessed a "visual recording of sexually explicit conduct involving a child with intent to print or display on the computer screen" the image. Each count of second-degree encouraging child sexual abuse alleged that defendant knowingly had possessed a visual recording of sexually explicit conduct involving a child "for the purpose of arousing and satisfying the sexual desires of defendant or another person."

At the end of the state's case, defendant moved for a judgment of acquittal on all the counts of first-degree encouraging child sexual abuse. He argued that he could be found

---

[2] Although defendant had obtained the supervisor's password several months earlier, the evidence showed only that he had visited the child pornography websites shortly before the officials discovered his unauthorized use of the computer.

[3] A hard drive contains both allocated and unallocated space. Allocated space contains data that a person has saved to the hard drive. When a person either deletes a file or views an image that he or she does not save, that data is not saved to a file on the allocated space. However, deleted files or unsaved images remain on the unallocated space on the computer's hard drive and, depending on whether the computer later writes over that data, can be recovered.

guilty of that crime only if he intended to print or display the child pornography for distribution or public exhibition. Defendant contended that the state had not offered any evidence that he had that intent. The trial court denied defendant's motion, reasoning that the prohibition against possessing child pornography with the intent to print or display it did not require proof of an intent to distribute or exhibit the image to another person. An intent to print or display the image for defendant's own use was sufficient.

After considering the parties' evidence, the trial court found defendant guilty of four counts of first-degree encouraging child sexual abuse based on the four images saved in the "CP" folder on the allocated space on the computer's hard drive. The court acquitted defendant of the remaining seven counts of first-degree encouraging child sexual abuse, which were based on the seven images recovered from the unallocated space on the hard drive. The court also found defendant guilty of all 11 counts of second-degree encouraging child sexual abuse.

At sentencing, the trial court merged the four first-degree and four second-degree convictions for encouraging child sexual abuse that arose out of the four images saved in the "CP" folder. It then considered whether to impose an enhanced sentence on the remaining 11 convictions. On that issue, the state argued that three aggravating factors warranted imposing enhanced or upward departure sentences. Defendant responded that, under the Sixth and Fourteenth Amendments, he had a right to have a jury find those aggravating factors beyond a reasonable doubt. The trial court disagreed and, sitting as the trier of fact, found three aggravating factors: (1) the offenses that defendant committed involved multiple victims or incidents; (2) the offenses involved a violation of public trust or professional responsibility; and (3) defendant persistently had been involved in similar offenses. Reasoning that any of those factors, standing alone, would warrant an enhanced sentence, the court imposed an enhanced or upward departure sentence on each of defendant's 11 convictions.

On appeal, defendant argued, among other things, that the trial court had erred in denying his motion for a

judgment of acquittal on the first-degree encouraging child sexual abuse charges. He argued, as he had before the trial court, that ORS 163.684 required the state to prove that he possessed the four images of child pornography with the intent to distribute or exhibit those images publicly. He also repeated his argument that, under the federal constitution, he had a right to have a jury decide beyond a reasonable doubt the aggravating factors on which the trial court based the enhanced sentences.[4] The Court of Appeals upheld the trial court's ruling on the motion for judgment of acquittal but agreed with defendant on the sentencing issue. *Bray*, 197 Or App at 19-20. Accordingly, the court affirmed defendant's convictions, vacated the sentences, and remanded the case for resentencing. *Id.* at 20.

Both the state and defendant petitioned for review. We allowed their petitions and begin with defendant's argument that the trial court should have granted his motion for judgment of acquittal. Defendant reasons that ORS 163.684 (prohibiting first-degree encouraging child sexual abuse) is aimed at persons who produce and distribute child pornography while ORS 163.686 (prohibiting second-degree encouraging child sexual abuse) is aimed at persons who consume child pornography by viewing it. Defendant argues that, because the evidence showed only that he was a consumer of child pornography, no reasonable trier of fact could find that he was guilty of the greater offense. The only convictions that the evidence supported, he contends, are the convictions for second-degree encouraging child sexual abuse.

Because defendant's argument turns on the meaning of ORS 163.684, we begin with the text of that statute. It provides:

"(1)   A person commits the crime of encouraging child sexual abuse in the first degree if the person:

"(a)(A)   Knowingly develops, duplicates, publishes, prints, disseminates, exchanges, displays, finances, attempts to finance or sells any photograph, motion picture,

---

[4] Defendant did not raise a state constitutional challenge to either his conviction or his sentence.

videotape or other visual recording of sexually explicit conduct involving a child or possesses such matter with the intent to develop, duplicate, publish, print, disseminate, exchange, display or sell it; or

"(B) Knowingly brings into this state, or causes to be brought or sent into this state, for sale or distribution, any photograph, motion picture, videotape or other visual recording of sexually explicit conduct involving a child; and

"(b) Knows or is aware of and consciously disregards the fact that creation of the visual recording of sexually explicit conduct involved child abuse."

We note, as an initial matter, that the text of ORS 163.684 prohibits persons from knowingly committing a series of acts regarding child pornography (and also from possessing child pornography with the intent to commit those acts). Logically, those acts divide into two categories: producing child pornography and distributing it. That is, the statute prohibits financing, attempting to finance, developing, or duplicating child pornography—acts that go to the production of child pornography. It also prohibits disseminating, exchanging, and selling child pornography—acts that involve distributing child pornography to others. Because the statute uses the word "or" to connect the series of prohibited acts, a person will violate the statute if he or she commits only one of those acts. For instance, a person will violate the statute if he or she knowingly develops a negative containing child pornography but does not disseminate or exchange it. Put differently, the crime is complete when the person knowingly develops the negative without regard to whether the developed picture is later disseminated, sold, or exchanged.

With that background in mind, we turn to the two acts—displaying and printing—that form the basis for the charges against defendant. Defendant argues that both terms require proof of some form of dissemination. To restate his argument slightly, he contends that displaying and printing fall within the second category of prohibited acts, all of which are directed against distributing or disseminating child pornography. Because the parties' arguments focus primarily on the prohibition against "display[ing]" child pornography, we begin with that term.

ORS 163.684 does not define "display," and we therefore give that term its ordinary meaning. *Flavorland Foods v. Washington County Assessor*, 334 Or 562, 568, 54 P3d 582 (2002). To "display" means:

> "**2 a** to spread before the view **:** exhibit to the sight or mind **:** give evidence of **:** SHOW, MANIFEST, DISCLOSE ‹~*ed* the flag for all to see› ‹~ a map on the table› ‹~ one's appreciation› ‹~ criminal tendencies› ; *specif* **:** to put on exhibition ‹these reproductions have been ~*ed* throughout Canada * * *› ‹two model houses were ~*ed* for a week› **b :** to exhibit conspicuously ‹~ a gift for ham acting * * *.›"

*Webster's Third New Int'l Dictionary* 654 (unabridged ed 2002).[5] As the state acknowledges, the word "display" ordinarily means showing something either publicly or to another person.[6] That definition suggests that the legislature intended the word "display" to fall into the second category of prohibited acts—acts involving the distribution or dissemination of child pornography to others.[7]

Nothing in the text or context of the statute suggests a different meaning. We conclude that the prohibition in ORS 163.684 against displaying child pornography or possessing child pornography with the intent to display it means showing the child pornography either publicly or to others or possessing it with that intent. The state does not dispute that, if that is the meaning of "display," there is no evidence in this record from which a reasonable juror could find that defendant showed or intended to show the images that he had saved in the "CP" file to anyone else. Rather, the evidence

---

[5] *Webster's* identifies the first definition of display—"to spread or stretch out or wide"—as obsolete, and we do not rely on it. *Webster's* at 654.

[6] The state relies on the following definition to support a narrower interpretation of "display": "the means by which radar echoes or other information is given to an operator in visual form in communications." *Webster's* at 654. The problem with that definition is that it is the definition of the *noun* "display" and not the *transitive verb* "display." ORS 163.684 uses the transitive verb, proscribing displaying child pornography or possessing child pornography "with the intent to * * * display * * * it."

[7] Not only does the ordinary meaning of "display" accord with the second category of prohibited acts, but displaying child pornography ordinarily has nothing to do with its production—a fact that suggests that the word is another aspect of the prohibition against disseminating child pornography to others.

shows that he had saved those images only for his private use.

The prohibition against printing child pornography or possessing it with an intent to print it presents a different issue. In the context of photographic and "other visual recording[s]," there are multiple ways in which a person may "print" a picture or other visual recording. In this context, to "print" means:

> "**2 a :** to make a copy of by impressing paper against an inked printing surface or by an analogous method *‹-ing* columned pages› ‹ bank notes›—often used with *up* **b :** to perform or cause to be performed all or some of the operations necessary to the production of (as a publication, a piece of printed matter, a picture) ‹ greeting cards› ‹ an edition of a newspaper› * * * **4 a :** to make (a positive picture) on sensitized photographic paper, film, plate, or other material from a negative or positive **b :** to make (a negative) from a negative or a positive."

*Webster's* at 1803. As that definition makes clear, a person may "print" a picture by making a photograph from a negative or by reproducing an image either by putting ink on paper or "by an analogous method."[8] Unlike the word "display," the word "print" does not connote showing or exhibiting the printed material to anyone else. The act of printing is complete without regard to whether the printed material is ever displayed, sold, exchanged, or disseminated. Printing thus falls within the first category of prohibited acts, all of which relate to the creation or production of child pornography.

It may be that the production of child pornography will simply be one of a series of steps towards its ultimate distribution. But, as the word "or" makes clear, the legislature has chosen to prohibit each step in the production of child pornography separately, without regard to whether the distribution or dissemination of that material ever occurs. It follows that, if there is evidence in the record from which a

---

[8] The use of the phrase "an analogous method" makes clear that printing is not limited to printing presses that reproduce images by putting ink to paper. It includes analogous technologies, such as ink-jet or laser printers. It also may include such things as creating a slide.

reasonable trier of fact could infer that defendant knowingly possessed child pornography with the intent to print it (even for his private use), the trial court correctly denied defendant's motion for judgment of acquittal on the charge of first-degree encouraging child abuse.

■　Defendant did not argue before the trial court that, if his construction of the statute were incorrect, there was no evidence from which a reasonable trier of fact could find that he intended to print the images of child pornography that he had saved to his hard drive for his own use. As defendant implicitly recognized, there was evidence from which a reasonable trier of fact could find that he had both the means and the intent to print the images saved to his hard drive. A reasonable trier of fact could find that defendant had the same means to print computer images that the other inmate who worked at the call center had had. Additionally, a reasonable trier of fact could infer from the pictures of children that defendant possessed in his cell that he intended to print the images of child pornography that he had saved on his computer so that he could view those images as well in the relative privacy of his cell. In short, the trial court did not err in denying defendant's motion for judgment of acquittal on the charges of first-degree encouraging child sexual abuse.[9]

　　　　The remaining issue is whether the trial court correctly imposed enhanced or upward departure sentences on defendant's convictions. On that issue, the United States Supreme Court has held that, under the Sixth and Fourteenth Amendments to the United States Constitution, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 US at 490. That rule applies to the enhanced or upward departure sentences that the trial court imposed in this case. *See Blakely v.*

---

[9] In later finding defendant guilty of four counts of first-degree encouraging child sexual abuse, the trial court did not specify whether it found that defendant intended to display the child pornography, to print it, or to both print and display it. Defendant did not ask the trial court to specify the particular ground for its findings of guilt on those counts, and he has not argued on review that, if there were sufficient evidence to find an intent to print but not display, the trial court's undifferentiated findings of guilt on those four counts should be disturbed.

*Washington*, 542 US 296, 301, 124 S Ct 2531, 159 L Ed 2d 403 (2004) (establishing proposition); *State v. Dilts*, 337 Or 645, 103 P3d 95 (2004) (holding that the rule in *Apprendi* applies to upward departure sentences).[10]

The state does not dispute that, under *Apprendi* and *Blakely*, defendant had a federal constitutional right to have a jury find beyond a reasonable doubt two of the three aggravating factors on which the trial court relied. It argues, however, that, because the third factor—"[p]ersistent involvement in similar crimes"[11]—comes within the "prior conviction exception" to *Apprendi*, the trial court could find by a preponderance of the evidence that defendant persistently had been involved in similar offenses.[12]

The Supreme Court did not have occasion in either *Apprendi* or *Blakely* to consider the scope of the prior conviction exception. The Court, however, considered that issue in *Shepard v. United States*, 544 US 13, 125 S Ct 1254, 161 L Ed 2d 205 (2005). The question in *Shepard* was whether "a sentencing court can look to police reports or complaint applications to determine whether an earlier guilty plea necessarily admitted, and supported a conviction for [a particular type] of burglary."[13] *Id.* at 16. In answering that question, the Court

---

[10] After the trial court held the sentencing hearing in this case, the Supreme Court made clear in *Blakely* that the rule in *Apprendi* applies to upward departure sentences. Because defendant raised that issue at the sentencing hearing, he preserved it for appellate review. Moreover, because defendant's conviction has not become final, there is no question of retroactivity. *See Miller v. Lampert*, 340 Or 1, 6, 125 P3d 1260 (2006) (noting that the question whether a new constitutional rule applies retroactively arises only after a conviction has become final).

[11] OAR 213-008-002(1)(b)(D) provides that a trial court may impose an upward departure sentence if it finds:

"Persistent involvement in similar offenses or repetitive assaults. This factor may be cited when consecutive sentences are imposed only if the persistent involvement in similar offenses or repetitive assaults is unrelated to the current offense."

[12] Because the trial court explained that it would have imposed upward departure sentences based on any of the three aggravating factors it found, we may affirm its sentencing decision if, as the state argues, "[p]ersistent involvement in similar offenses" comes within the prior conviction exception.

[13] The federal statute at issue in *Shephard* permitted the sentencing court to impose an enhanced sentence if the defendant had prior convictions for burglarizing a dwelling. The defendant in *Shephard* previously had pled guilty to a charge of burglary that, under state law, could have involved entry into a dwelling, a boat, or a car.

held, as a matter of statutory interpretation, that in cases involving a prior guilty plea, a sentencing court may look to "the statement of factual basis for the charge * * * shown by a transcript of plea colloquy or by written plea agreement presented to the court, or by a record of comparable findings of fact adopted by the defendant upon entering the plea" to determine the types of burglary to which the defendant pled. *Id.* at 20. However, a court may not look beyond that to police reports and complaint applications. *Id.* at 21-23.

A plurality of the Court explained in *Shepard* that its statutory interpretation was consistent with *Apprendi*. The plurality reasoned that, if a sentencing court could look to police reports and complaint applications to determine the type of burglary to which the defendant pled, the sentencing judge would be resolving factual disputes that implicated the rule in *Apprendi*. The plurality reasoned that,

> "[w]hile the disputed fact here can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to * * * *Apprendi* to say that [the prior conviction exception in] *Almendarez-Torres* [*v. United States*, 523 US 224, 118 S Ct 1219, 140 LEd 2d 350 (1988)] clearly authorizes a judge to resolve the dispute."

*Id.* at 25. As the plurality described the scope of the prior conviction exception, it includes only those facts that the conviction itself or the judicial record conclusively establishes. Any other fact necessary to impose an enhanced sentence falls outside the exception.[14]

■    With that background in mind, we turn to whether "[p]ersistent involvement in similar offenses" comes within

---

[14] Justice Thomas wrote separately in *Shepard*, reasoning that there should be no prior conviction exception to *Apprendi*. 544 US at 27-28 (opinion concurring in part and concurring in the judgment). Because five members of the Court would have held that the prior conviction exception is no broader than the plurality described it, the plurality's reasoning is controlling.

We note that the status of the prior conviction exception has been subject to some debate. Although Justice Thomas observed in *Shepard* that a majority of Court had recognized that the case that gave rise to the exception "was wrongly decided," *id.* at 27 (opinion concurring in part and concurring in the judgment), more recently a majority of the Court relied on the exception, *James v. United States*, _____ US _____ , 127 S Ct 1586, 1600 n 8, 167 L Ed 2d 532 (2007).

*Apprendi's* prior conviction exception. In arguing that it does not, defendant contends that the issue of "persistent involvement" presents a factual issue for the jury that goes beyond the scope of the exception. We note, as an initial matter, that the use of the word "persistent" implies that the defendant's involvement in those offenses must be recurring or continuing. *See Webster's* at 1686 (defining "persistent" as "existing for a long or longer than usual time or continuously: ENDURING, LINGERING").

In determining whether the record establishes "[p]ersistent involvement in similar offenses," a sentencing court must do more than find that a defendant has two or more prior convictions for similar offenses. The trier of fact must infer from the number and frequency of those prior convictions whether the defendant's involvement in those offenses is "persistent"; that is, the trier of fact must determine whether the defendant's involvement in similar offenses is sufficiently continuous or recurring to say that it is "persistent." If, as the plurality explained in *Shepard*, the prior conviction exception includes only those facts that the conviction itself or the judicial record conclusively establishes, then it does not include inferences, such as persistent involvement in similar offenses, that a trier of fact may draw from a series of prior convictions. In short, we agree with the Court of Appeals that "[p]ersistent involvement in similar offenses" presents a factual issue that, under *Apprendi* and *Blakely*, a defendant may insist that a jury find beyond a reasonable doubt.[15]

■ ■ The state advances a final argument. It contends that, even if the sentencing court erred in not sending the question of persistent involvement to the jury, any error was harmless. *See Washington v. Recuenco,* ___ US ___ , 126 S Ct 2546, 165 L Ed 2d 466 (2006) (holding that *Apprendi* error

---

[15] Defendant appears to argue that determining whether a person's prior offenses are "similar" to the conviction for which he or she is being sentenced also presents a factual issue that falls outside the prior conviction exception. Because we hold that "persistent involvement" requires the determination of a factual issue that takes the entire sentencing factor—persistent involvement in similar offenses—out of the prior conviction exception, we need not decide whether the phrase "similar offenses" also would lead to the same conclusion.

is subject to harmless error analysis). A violation of a defendant's federal constitutional right is harmless only when a "reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall*, 475 US 673, 681, 106 S Ct 1431, 89 L Ed 2d 674 (1986) (describing the test announced in *Chapman v. California*, 386 US 18, 87 S Ct 824, 17 L Ed 2d 705 (1967)).

The only evidence in this record of defendant's involvement in prior offenses comes from the presentence investigation report. That report states that, on July 11, 1996, defendant was convicted of delivering a controlled substance to a minor, *former* ORS 475.995 (1995), and endangering the welfare of a minor, ORS 163.575. The report does not disclose the acts out of which those two charges arose. The report also states that five days later, on July 16, 1996, defendant was convicted of ten counts of using a child in a display of sexually explicit conduct, ORS 163.670. The report notes that the "[t]en counts in this case [of using a child in a display of sexually explicit conduct] are of [*sic*] the same incident, but involve two separate victims."

In analyzing the state's harmless error argument, we note, as an initial matter, that nothing in the record necessarily establishes any connection between defendant's ten convictions for using a child in a display of sexually explicit conduct and his two convictions for delivering a controlled substance to a minor and for endangering the welfare of a minor. Rather, the only prior offenses that, as far as this record discloses, may be similar to the offenses for which defendant was convicted are the ten convictions for using a child in a display of sexually explicit conduct. As noted, those ten convictions apparently arose from a single incident involving two children.

On this record, we cannot say that the error was harmless; that is, we cannot say that no reasonable juror could draw any conclusion other than "[p]ersistent involvement in similar offenses" from this record. *See Neder v. United States*, 527 US 1, 16, 119 S Ct 1827, 144 L Ed 2d 35 (1999) (stating similar test for determining whether failing to submit an element of a crime to the jury was harmless error).

Rather, a reasonable juror could conclude from the fact that defendant was involved in similar offenses on only one prior occasion (albeit with multiple occurrences) that the state failed to prove "persistent involvement" beyond a reasonable doubt.

The facts in *Neder* provide a telling comparison. In that case, the government had charged the defendant with filing false income tax returns because he had failed to report $5 million in income on those returns. 527 US at 6. Although the trial court should have instructed the jury that it had to find whether the $5 million omission was material, *id.* at 7-8, the Supreme Court held that any error in sending the issue of materiality to the jury was harmless, *id.* at 16. As the Court explained, "no jury could reasonably find that [the defendant's] failure to report substantial amounts of income on his tax returns was not 'a material matter.' " *Id.* at 16.

The question of persistent involvement on this record presents a far closer issue than the question whether a $5 million omission is material. Although defendant does not dispute that a reasonable juror could infer "persistent involvement" from the prior offenses in this record, we cannot say that this record would require a reasonable juror to draw that inference. The failure to submit that issue to a jury was not harmless. The Sixth and Fourteenth Amendments, as interpreted in *Apprendi* and *Blakely*, give defendant the right to have a jury decide whether any aggravating factor exists that warrants imposing an enhanced sentence.

The decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed, and the case is remanded for resentencing.