Argued and submitted October 30, 2019, pretrial order reversed and remanded
March 18, 2020

STATE OF OREGON,
*Plaintiff-Appellant,*

*v.*

SCOTT MICHAEL McNUTT II,
*Defendant-Respondent.*

Washington County Circuit Court
17CR52858; A167963

463 P3d 563

The state appeals from a pretrial order granting defendant's motion to suppress evidence obtained pursuant to a search warrant. The trial court ruled that the affidavit filed in support of the warrant did not establish probable cause that the files on defendant's computer contained child pornography in violation of ORS 163.684 and ORS 163.686. *Held*: The affidavit included three sets of facts that collectively established probable cause that the files on a computer in defendant's home contained child pornography: (1) the names of two specific files downloaded from the computer implied that both files contained child pornography; (2) an experienced detective's assessment after viewing some of the 300 files downloaded from the computer that those files contained child pornography; and (3) defendant's use of a network that is commonly employed to share child pornography over the internet.

Pretrial order reversed and remanded.

Andrew Erwin, Judge.

Christopher A. Perdue, Assistant Attorney General, argued the cause for appellant. Also on the briefs were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Adam L. Dean argued the cause and filed the brief for respondent.

Before DeHoog, Presiding Judge, and Mooney, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Pretrial order reversed and remanded.

## KISTLER, S. J.

The state appeals from a pretrial order granting defendant's motion to suppress evidence obtained pursuant to a search warrant. The trial court ruled that the affidavit filed in support of the warrant did not establish probable cause that the files on defendant's computer contained child pornography. We reverse the trial court's order.

We take the facts from the affidavit filed in support of the warrant. BitTorrent is a peer-to-peer (P2P) file-sharing network that allows persons to share pictures and videos over the internet. "P2P file sharing networks, including the BitTorrent network, are frequently used to trade digital files of child pornography." A BitTorrent user will begin the process of sharing files by creating a "torrent." The torrent does not contain the file being shared; rather, it typically contains a name or description of the file and identifies computers in the BitTorrent network where the file may be found.[1]

A person looking for a particular subject on the BitTorrent network can conduct a keyword search to find torrents that describe files of potential interest. The affiant explained:

"For example, a person interested in obtaining child pornographic images on the BitTorrent network would open the BitTorrent client application on his/her computer and conduct a keyword search for files using a term such as 'preteen sex.' *** The results of the torrent search are typically returned to the user's computer by displaying them on the torrent hosting website. The hosting website will typically display information about the torrent, which can include the name of the torrent file, the name of the file(s) referenced in the torrent file, the file(s) size, and the 'info-hash' SHA-1 value of the torrent file. The user then selects a torrent of interest to download to their computer."

---

[1] A torrent ordinarily uses "trackers" to identify peers on the network who are sharing the file described in the torrent. The BitTorrent program permits users to download the entire file from a single computer or constituent parts of a file from multiple computers, and it uses a unique "info-hash" or "SHA-1" value for each file to ensure that the constituent parts form a single file.

In this case, two Oregon detectives were investigating the BitTorrent network to identify persons sharing child pornography in Oregon. One detective focused on a particular computer located in Oregon "because it was associated with a torrent" that referred to "a file of investigative interest to child pornography investigations." Based on the information contained in the torrent, the detective "directly connected" to the computer and downloaded the following file from that computer: "Cp 9Yo Dad Cum Face Dee And Desi Zadoom Pedo Cumshot 9.mpg."

Two days later, the detective investigated another torrent that "was identified as being a file of investigative interest to child pornography investigations." That torrent was associated with the same computer, and the detective downloaded the following file from that computer: "11yo - girl - Preteen girl just wants to Fuck & Suck (Sound).avi." At approximately the same time, the other detective learned that the computer from which those two files were downloaded was located in defendant's home in Washington County.[2] During a 30-day period, the detectives downloaded approximately 300 files from a computer in defendant's home.[3]

The detectives transferred all the downloaded files to Detective Kiurski in the Washington County Sheriff's Office. Kiurski has substantial training and experience in investigating child sex crimes.[4] He "briefly looked at some of th[e] files [downloaded from the computer in defendant's home] and verified that there were over 300 files downloaded between 1/2/17 and 2/3/17 from the [computer in defendant's home] to [the detectives' computer] and that those files did contain child pornography."

---

[2] Neither detective knew initially that the computer was in defendant's home. They knew only its unique internet protocol address. Later, the detectives learned that the computer's internet protocol address had been assigned to a computer in defendant's home.

[3] The detectives downloaded the two named files on January 6 and January 8, 2017. They downloaded more than 300 files from defendant's computer between January 2 and February 3, 2017.

[4] Kiurski had received over 400 hours of training relating to the investigation of sex crimes and child abuse when he investigated this case. Additionally, for approximately the last five years, he had devoted all his time as a detective to investigating crimes against children.

Based on that and other information, Kiurski concluded that he had

"probable cause to believe that one or more of the occupants residing at [defendant's home between August 2016 and January 25, 2017] used a computer(s), cell phone(s), tablet(s) or mobile electronic device, that more likely than not is located [at defendant's home] to engage in Encouraging Child Sexual Abuse in the First Degree in violation of ORS 163.684 and Encouraging Child Sexual Abuse in the Second Degree in violation of ORS 163.686."

Kiurski requested a warrant authorizing the seizure and search of computers and related electronic devices for evidence of the crimes of first- and second-degree encouraging child sexual abuse. *See* ORS 163.684 (defining first-degree encouraging child sexual abuse); ORS 163.686 (defining second-degree encouraging child sexual abuse). Having concluded that there was probable cause to seize and search those devices, the magistrate issued the warrant.

Defendant moved to suppress the evidence discovered as a result of executing the warrant. His argument in support of the motion was narrow. He did not challenge any of the facts recited in the affidavit, nor did he dispute that the affidavit established probable cause that all the downloaded files (the two named files and the approximately 300 unnamed files) would be found on a computer in his home and related electronic devices. He did not contend that the warrant was overbroad, nor did he argue that the officers exceeded the scope of the warrant in executing it.[5] Rather, his argument focused on one issue: He argued that the warrant failed to establish probable cause that any file on his computer contained child pornography.

On that issue, defendant began from the premise that Kiurski's affidavit reduced to a conclusory assertion that some of the files downloaded from a computer in defendant's home contained "child pornography." Defendant contended that, to establish probable cause, the affidavit

---

[5] Defendant also does not argue that the officers engaged in an impermissible search when they downloaded files that were publicly available on the BitTorrent network; that is, he does not argue that the state unconstitutionally obtained the evidence on which it based its probable cause argument.

needed either to attach copies of the downloaded files to the affidavit, describe specifically the contents of the downloaded files, or include more inculpatory circumstances than Kiurski's affidavit had. Defendant reasoned that a conclusory assertion that the files contained child pornography did not provide a sufficient basis for the magistrate to make an independent determination that the files, in fact, depicted children engaged in sexual conduct. The state responded that not only did the affidavit establish that a detective who was experienced in investigating child sex crimes had viewed the files and determined that they contained child pornography, but the attendant circumstances set out in the affidavit corroborated Kiurski's determination. It followed, the state argued, that the magistrate reasonably concluded that the affidavit established probable cause.

After carefully considering the parties' arguments, the trial court ruled in defendant's favor. It accordingly granted his motion to suppress and entered a pretrial order suppressing the evidence discovered as a result of the warrant. The state appeals from that order.

On appeal, the parties reiterate the positions they asserted below. Additionally, defendant argues that the trial court's ruling may be affirmed on an alternative ground. He argues for the first time on appeal that, even if the affidavit was sufficient to establish probable cause, the warrant did not comply with *State v. Mansor*, 363 Or 185, 421 P3d 323 (2018). We begin with the predicate question whether the warrant established probable cause that the files on a computer in defendant's home contained child pornography. In doing so, we analyze that question initially under Article I, section 9, of the Oregon Constitution and then turn to the Fourth Amendment to the United States Constitution.

## I.   PROBABLE CAUSE

A.   *Article I, section 9*

As noted above, defendant does not controvert or otherwise challenge any of the facts set out in the affidavit. We accordingly accept those facts as true, as well as any

inferences that the magistrate reasonably could have drawn from them. *See State v. Webber*, 281 Or App 342, 347 & n 7, 383 P3d 951 (2016) (stating the standard of review). The question accordingly becomes a legal one: Did the facts in the affidavit and all reasonable inferences that can be drawn from those facts establish probable cause that a computer in defendant's home contained "visual recording[s] of sexually explicit conduct involving a child."[6] *See* ORS 163.684 (prohibiting producing or distributing visual recordings of sexually explicit conduct involving a child or possessing that material with the intent to distribute it); ORS 163.686 (prohibiting possessing or acquiring visual recordings of sexually explicit conduct involving a child); *State v. Bray*, 342 Or 711, 717-18, 160 P3d 983 (2007) (discussing the crime of first-degree encouraging child sexual abuse).

In answering that question, we use the phrase "child pornography" in this opinion as a shorthand way of describing the material that ORS 163.684 and ORS 163.686 prohibit—namely, visual recordings of sexually explicit conduct involving a child. Additionally, in determining whether Kiurski's affidavit established probable cause that the files on defendant's computer contained child pornography, we are mindful that "[t]he standard is one of probability, not certainty," and that "the facts articulated in support of probable cause must be assessed in a commonsense and realistic fashion." *State v. Foster*, 350 Or 161, 169, 252 P3d 292 (2011).

With those considerations in mind, we turn to three sets of facts set out in the affidavit that, we conclude, collectively establish probable cause that the files on a computer in defendant's home contained child pornography: (1) the two named files that were downloaded from a computer in defendant's home; (2) an experienced detective's assessment after viewing some of the 300 files downloaded from the same computer that those files contained child pornography; and (3) defendant's use of a network that is commonly employed to share child pornography over the internet.

---

[6] The phrase "sexually explicit conduct" means, among other things, actual or simulated sexual intercourse, oral-genital contact, anal-genital contact, and "[l]ewd exhibition of sexual or other intimate parts." ORS 163.665(3).

We focus initially on the two named files downloaded from the computer in defendant's home.[7] One file was titled, "Cp 9Yo Dad Cum Face Dee And Desi Zadoom Pedo Cumshot 9.mpg." The magistrate reasonably could have inferred that "Cp" was an abbreviation for child pornography. *See Bray*, 342 Or at 715 (explaining that the defendant in that case saved images of "child pornography" to a computer folder labeled "CP"). The magistrate also reasonably could have inferred that "9Yo" referred to the age of the children depicted in the file. The name of the file then describes the result of a sexual activity presumably between "Dad" and two nine-year-old children Dee and Desi. Finally, the title of the first file ends with the phrase, "Pedo Cumshot." The magistrate reasonably could have inferred that, in context, the phrase referred to sexually explicit activity involving pedophilia.

The title of the second file is equally telling: "11yo - girl - Preteen girl just wants to Fuck & Suck (Sound). avi." That title leaves little doubt as to the age of the child (preteen), her gender, or the sexual activities depicted. The titles of those two files permitted the magistrate reasonably to infer that both files contained, as the title for one of those files explicitly stated, "Cp" or child pornography.

Defendant, however, discounts the significance of those two file names. He argues that the affidavit stated only that those two files were "of 'investigative interest to child pornography investigations.' It did not allege that [the] files were 'child pornography.'" In our view, defendant misperceives what the affidavit said. The part of the affidavit that defendant quotes describes why the detectives focused on the torrents that led them to download the two named files. It does not purport to preclude the magistrate from considering the names of those two downloaded files in determining whether they contained child pornography. *See Foster*, 350 Or at 169 (reminding courts to consider

---

[7] Although the affidavit is not completely clear on this point, the magistrate reasonably could have inferred that the file names set out in the affidavit were taken from the two files downloaded from defendant's computer rather than from the description of those files in the torrents. Not only is that a permissible reading of the affidavit, but it is the more reasonable reading based on the sentence structure.

the "totality of the circumstances" in assessing probable cause).[8]

We need not decide whether the magistrate could have relied solely on the names of the two files downloaded from a computer in defendant's home in finding probable cause that those files contained child pornography. *See United States v. Miknevich*, 638 F3d 178, 184-85 (3d Cir), *cert den*, 565 US 847 (2011) (relying, in part, on the graphic title of a single computer file to find probable cause that the file and the computer from which it was downloaded contained child pornography). In this case, the affidavit also states that Kiurski, a detective who had extensive training and experience investigating child sexual abuse crimes, personally viewed some of the 300 files downloaded from defendant's computer and concluded that those files contained child pornography in violation of ORS 163.684 and ORS 163.686.[9] Kiurski's assessment of the contents of the downloaded files corroborates what the names of the two files implied and further supports the magistrate's determination that there was probable cause that the files on a computer in defendant's home contained visual recordings of sexually explicit conduct involving children.

Defendant argues that an assertion that an image or video is "child pornography" is a subjective determination that is entitled to little or no weight in determining probable cause. As noted above, however, the magistrate reasonably could have inferred that Kiurski determined that the files he viewed contained child pornography in violation

---

[8] In the trial court, defendant argued that the two files names did not necessarily establish that the files depicted "sexually explicit conduct" with a child. For example, he argued that the second file could have merely portrayed an 11-year-old girl who was excited about engaging in the named activities and that it did not necessarily follow from the file name that the file actually depicted her engaging in those activities. Suffice it to say that the affidavit should be read in "a commonsense and realistic fashion" and that "probability, not certainty," is the standard for probable cause. *See Foster*, 350 Or at 169 (stating that principle).

[9] Kiurski stated at one point in his affidavit that the files he viewed contained "child pornography." At another point, he concluded that the evidence established probable cause that those files violated ORS 163.684 and ORS 163.686. The magistrate reasonably could infer from those two statements that Kiurski concluded that the files he viewed contained "child pornography" in violation of ORS 163.684 and ORS 163.686—that is, they depicted sexually explicit conduct involving children.

of ORS 163.684 and ORS 163.686. Those statutes prohibit possessing, producing, or distributing "visual recording[s] of sexually explicit conduct involving a child"—conduct that includes actual or simulated sexual intercourse, oral-genital contact, anal-genital contact, masturbation, and "[l]ewd exhibition of sexual or other intimate parts." *See* ORS 163.665(3) (defining sexually explicit conduct). It follows that the question whether an image or a video depicts sexually explicit conduct involving a child often will entail an objective assessment, and Kiurski's conclusion that the files he viewed constituted child pornography in violation of ORS 163.684 or ORS 163.686 is entitled to greater weight than defendant perceives.[10]

To be sure, other cases may turn on more subjective prohibitions and thus require more explicit descriptions of the images to establish probable cause that those images are pornographic. For example, in *United States v. Brunette*, 256 F3d 14 (1st Cir 2001), the court considered whether there was probable cause that an image constituted a "lascivious exhibition of [a child's] genitals" in violation of a federal statute. *Id.* at 17-18. The court explained that it had adopted a six-factor test to determine when a picture would be considered a "lascivious exhibition" and that an affidavit that merely parroted the statutory prohibition was not sufficient to establish probable cause that the picture was pornographic.[11] *See id.* at 17-19.

---

[10] Although the definition of sexually explicit conduct in ORS 163.665(3) primarily lists conduct that can be assessed objectively (sexual intercourse, oral-genital conduct, masturbation, and the like), one listed act—"[l]ewd exhibition of sexual or other intimate parts"—may entail a more subjective assessment. In this case, Kiurski did not rely explicitly on "[l]ewd exhibition" in concluding that the files he viewed constituted child pornography in violation of ORS 163.684 and ORS 163.686. And the titles of the two files set out in the affidavit permitted the magistrate to infer that the files Kiurski viewed were not limited to "[l]ewd exhibition" but included other sexually explicit conduct listed in ORS 163.665(3), that can be assessed objectively.

[11] Not all pictures of naked children are lascivious, as a quick survey of Renaissance art reveals. *See, e.g., Putti with a Wine Press*, National Gallery of Art, Washington, D.C. (attributed to a follower of Raphael *c.* 1500). Presumably, to distinguish putti from pornography, the First Circuit considers whether a child's genitals or pubic area is the focal point of the image, whether the setting is sexually suggestive, whether the child is depicted in an unnatural pose or inappropriate attire, whether the child is clothed, partially clothed, or nude, whether the image suggests sexual coyness, and whether the image is designed to elicit a sexual response in the viewer. *Brunette*, 256 F3d at 18 n 4.

By contrast, an experienced officer's assessment that an image or video depicts sexually explicit conduct in violation of ORS 163.684 and ORS 163.686 involving a child can encompass a more objective conclusion and thus be entitled to greater weight in a magistrate's determination of probable cause. We need not decide whether Kiurski's assessment that the files he viewed constituted child pornography in violation of ORS 163.684 and ORS 163.686 would be sufficient, standing alone, to establish probable cause. We note only that the greater specificity that Oregon's statutes require can lend greater weight to an experienced officer's assessment that a visual recording violates those statutes.

We note one final consideration. The magistrate reasonably could have inferred that, during a one-month period, defendant shared over 300 files on a P2P network that is "frequently used to trade digital files of child pornography." In *State v. Martin*, 327 Or 17, 22, 956 P2d 956 (1998), the Supreme Court explained that a defendant's repeated presence at a location known for continuous drug sales gave an officer probable cause that the defendant's late night, hand-to-hand transaction constituted distribution of a controlled substance. As we later made clear, however, the context in which that act occurs will shed light on its meaning. *See State v. Jacobs*, 187 Or App 330, 334-35, 67 P3d 408 (2003) (explaining that a hand-to-hand transaction that occurred in more benign circumstances did not give rise to probable cause). In this case, defendant's repeated use over a one-month period of a P2P network that is frequently employed to trade digital files of child pornography sheds light on the nature of the files he offered to share. Specifically, his frequent use of that network cuts against his argument that the named files he shared depicted innocuous activity, and it corroborates Kiurski's assessment that the files he viewed were child pornography that violated ORS 163.684 and ORS 163.686.

We do not place undue weight on defendant's use of the BitTorrent network. Rather, it is simply another piece of the puzzle that, considered in conjunction with the two named files downloaded from a computer in defendant's home and Kiurski's assessment that the downloaded files he

viewed contained child pornography, established probable cause that officers would find child pornography in violation of ORS 163.684 and ORS 163.686 on a computer in defendant's home. Indeed, this affidavit contains more evidence that the files in defendant's home contained child pornography than the affidavit that we found sufficient in *State v. Tropeano*, 238 Or App 16, 241 P3d 1184 (2010), *rev den*, 349 Or 654 (2011).[12]

B.   *Fourth Amendment*

Defendant argues that, even if Kiurski's affidavit was sufficient to establish probable cause under Article I, section 9, the Fourth Amendment requires more than a "bare conclusio[n]" that the files he viewed were child pornography. *See United States v. Leon,* 468 US 897, 915, 104 S Ct 3405, 82 L Ed 2d 677, *reh'g den*, 468 US 1250 (1984) (stating that "bare conclusio[n]" of wrongdoing is insufficient to establish probable cause). As explained above, one problem with defendant's argument is the premise that underlies it. Kiurski's affidavit was not limited to his conclusion that the files he viewed contained child pornography. The affidavit also sets out the graphic titles of two files downloaded from a computer in defendant's home and defendant's persistent use for over a month of a network that is frequently used to share child pornography. Beyond that, defendant's argument fails to recognize that, in light of Oregon's more specific prohibitions against visual recordings of sexually explicit conduct involving a child, Kiurski's assessment that the files he viewed violated those prohibitions is entitled to more weight than defendant perceives.

In similar circumstances, the federal circuits have held that comparable affidavits established probable cause that suspect material was child pornography. *See United States v. Haymond*, 672 F3d 948, 950, 959 (10th Cir), *cert den*, 567 US 923 (2012) (upholding a magistrate's probable cause determination based on "filenames suggesting child

---

[12] In *Tropeano*, we concluded that there was probable cause that the defendant possessed child pornography based on his prior conviction for that crime, his subscription to a pornographic magazine from a country where child pornography was legal, his possession of a laptop, and his request to motel staff for 15 minutes of privacy. 238 Or App at 19-20.

pornography" and the agent's assessment that, having viewed the files, he "believed [they] contained child pornography"); *Miknevich*, 638 F3d at 185 (graphic file name plus the officer's statement that the file's SHA-1 value was associated with "child pornography" established probable cause).[13] Indeed, in *United States v. Grant*, 490 F3d 627, 632 (8th Cir 2007), *cert den*, 552 US 1281 (2008), the Eighth Circuit found probable cause based solely on a computer repairman's report that the defendant's computer contained child pornography.

To be sure, the Third Circuit distinguished *Miknevich* when the affidavit stated that two coworkers had reported seeing the defendant "viewing child pornography" at work, unlike this case where the magistrate reasonably could have inferred that an experienced officer determined that the files he viewed depicted sexually explicit conduct involving a child. *United States v. Pavulak*, 700 F3d 651, 661-62 (3d Cir 2012), *cert den*, 569 US 968 (2013). Similarly, the Fourth Circuit has held that an affidavit stating that photographs depicted "nude children" is insufficient to establish probable cause. *United States v. Doyle*, 650 F3d 460, 473 (4th Cir 2011). And as noted above, the First Circuit has held that merely describing an image as a "lascivious exhibition" of a child's genitals is insufficient to establish probable cause. *See Brunette*, 256 F3d at 19.

The decisions in *Miknevich* and *Haymond* persuade us that the magistrate in this case complied with the Fourth Amendment when she found that the affidavit established probable cause that a computer in defendant's home contained child pornography in violation of ORS 163.684 and ORS 163.686. We also find the decisions in *Brunette*, *Doyle*, and *Pavulak* distinguishable. Even if those federal decisions

---

[13] In upholding the magistrate's probable cause determination, the *Miknevich* court relied not only on the graphic file name but also on the detective's statement that he knew the file contained "child pornography" based on its SHA-1 or info-hash value. 638 F3d at 185. However, as the court previously had observed, the detective never explained how he knew that information, *id.* at 182-83, nor did he explain what he meant by the phrase "child pornography." In this case, Kiurski's statement that the downloaded files he viewed contained child pornography was based on his personal knowledge and thus provided greater support for finding probable cause than the detective's unexplained statement in *Miknevich* regarding the file's SHA-1 value.

constituted binding precedent, they do not persuade us that the magistrate erred in light of the statements in *this* affidavit. *Cf. Eastern Oregon Mining Assoc. v. DEQ*, 365 Or 313, 320 & n 4, 445 P3d 251 (2019) (explaining that federal court of appeals decisions interpreting federal law do not bind state courts interpreting the same issue; only the United States Supreme Court's decisions on federal law are binding). We accordingly conclude that the affidavit provided a substantial basis from which the magistrate could find probable cause that the files on a computer in defendant's home contained child pornography in violation of ORS 163.684 and ORS 163.686. *See Massachusetts v. Upton*, 466 US 727, 732-33, 104 S Ct 2085, 80 L Ed 2d 721 (1984) (explaining that, under the Fourth Amendment, the question for a reviewing court is "whether the evidence viewed as a whole provided a 'substantial basis' for the Magistrate's finding of probable cause").

## II.   PARTICULARITY

Defendant argues, for the first time on appeal, that the warrant was not sufficiently particular. Relying on the Oregon Supreme Court's decision in *Mansor*, he argues that we can affirm the trial court's ruling on an alternative ground. *See Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001) (explaining when a trial court's ruling may be upheld on alternative grounds). He contends:

> "Here, the search warrant failed to comply with the requirements set forth in *Mansor* * * * [because] it did not describe with particularity 'what' law enforcement sought to find and the temporal limitations on such search. The warrant also did not impose limits on the use of information disclosed in the examination; or limit the search to the information identified in the warrant."

Although defendant asserts that the warrant was deficient in those respects, his brief never explains why that is so, and we conclude that the grounds he identifies are either not well taken or do not provide a basis under *Outdoor Media Dimensions Inc.*, for upholding the trial court's order.

Defendant notes initially that the warrant did not establish "what" law enforcement sought to find. However,

the warrant and the affidavit, whether viewed individually or collectively, made clear "what" the warrant authorized officers to look for—evidence of visual recordings of sexually explicit conduct involving children. *See Mansor*, 363 Or at 216 (explaining that "a warrant must describe, with as much specificity as is reasonably possible under the circumstances, *what* investigating officers believe will be found on the electronic devices" and that "the 'what' is a description of the *information* related to the alleged criminal conduct which there is probable cause to believe will be found on the computer") (emphases in original). In that respect, this case finds support in *State v. Savath*, 298 Or App 495, 502, 447 P3d 1, *rev den*, 365 Or 722 (2019), where we explained that the crime of creating and possessing child pornography "served to greatly clarify and limit" the scope of the warrant.

Defendant also argues that the warrant lacked a temporal limit. The state responds that the affidavit identified that the investigation began in August 2016 and continued through January 2017. It contends that a reasonable period encompassing those dates provides a sufficient temporal limitation on the scope of the search. The parties, however, did not argue below and the trial court did not find whether the affidavit could be considered in determining the scope of the search that the warrant permitted. *See Mansor*, 363 Or at 203-04 (discussing when the affidavit may be considered in determining the scope of the warranted search). Because the record developed in the trial court is not sufficient to permit us to resolve whether the affidavit may be considered in determining the limits of the warranted search, we conclude that defendant's second alternative ground for affirmance is not properly before us. *See Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (explaining that the absence of a developed record precludes reliance on an alternative ground for affirmance).

Finally, in asserting that the warrant failed to impose a limit on the use of information that officers discovered during the course of executing the warrant, defendant appears either to misperceive what *Mansor* said or to rely on information that is not part of the record before us. *Mansor* explained that police officers may come across information in searching a computer that falls outside the

permissible scope of the warranted search. 363 Or at 220. *Mansor* observed that "the state should not be permitted to use information obtained in a computer search if the warrant did not authorize the search for that information, unless some other warrant exception applies." *Id.* at 221. As *Mansor* makes clear, the limit that defendant seeks to invoke is on the future use of evidence discovered during the search of a computer that either goes beyond what the warrant properly authorized or that fails to come within a warrant exception.

In this case, the record developed in the trial court does not disclose what information the state uncovered in executing the warrant. It follows that the record does not disclose whether the state discovered evidence that fell outside the scope of the warrant, nor does it disclose whether, if the state did discover such evidence, the evidence came within an exception to the warrant requirement. Finally, the record does not disclose whether the state has sought to use such evidence, if it exists. Not only is the use issue that defendant raises premature, but the record is not sufficiently developed for us to consider the final ground for alternative affirmance that defendant identifies. *See Outdoor Media Dimensions Inc.*, 331 Or at 659-60 (alternative grounds for affirmance not available if the record is not sufficiently developed).

We conclude that the first alternative ground for affirming the trial court's pretrial order that defendant has identified is not well taken and that the other two alternative grounds are not properly before us. We express no opinion on any challenges that defendant may properly raise to the warrant when this case is back before the trial court. It is sufficient to resolve this appeal to hold that the affidavit established probable cause that evidence of visual recordings of sexually explicit conduct involving children would be found on a computer in defendant's home and that defendant has not identified a viable alternative ground for upholding the trial court's pretrial order on appeal.

Pretrial order reversed and remanded.